## William B. Robinson and others v. John B. Baugh.

*Equity pleading and practice : Nuisances : Injunction bill : Parties.* Several separate owners of distinct property interests that are alike affected may join as complainants, without the attorney general, in a bill to enjoin the carrying on of a business in the vicinity of their dwellings in such a manner as to create a nuisance, where the grievance stated has one source, and operates in the same general manner against all; to hold otherwise would be to sacrifice substance to useless form.

*Equity pleading and practice : Injunction bill : Verification.* Where an injunction bill is framed as a mere pleading, to obtain relief only on a final hearing, and not to be used as the basis of an application for preliminary relief, and where the case exhibited is within the ordinary jurisdiction in equity, and stands on no peculiar ground which might call for a verification of the bill, the objection that it should be sworn to is unwarranted.

*Nuisances : Equity jurisprudence : Trial at law : Remedy : Injunction.* Under our statute *(Comp. L. 1871, § 6377),* conferring jurisdiction in equity in all matters concerning nuisances where there is not a plain, adequate and complete remedy at law, with power to grant injunctions to stay or prevent nuisances, it is not essential that a trial at law should precede the filing of an injunction bill in cases where the remedy at law is not plain, adequate and complete. If the court of equity deems a finding by jury needful, it may in its discretion direct one, but it is not bound to do so.

*Nuisance : Injunction.* It is no defense to a bill to enjoin a nuisance caused by the manner in which a business is conducted in a neighborhood, that some of the complainants have establishments in the same vicinity to which similar objections lie as are made to the one in question.

*Nuisances : Estoppel : Acquiescence : Complaints.* Complainants in such a bill cannot be held estopped on the ground of acquiescence in defendant's operations, where the grievance complained of had only been in existence about two years, and that which gave greatest offense only about one year, when the bill was filed, and where complaints of the injurious character of the business had been made some months before to the common council, and also at an early day to the defendant in person.

*Nuisances : Injunction.* The fact that other similar nuisances are maintained in the same vicinity by others who have not been prosecuted, can be no reason for declining to stop one maintained by the defendant; nuisances separately maintained must be separately proceeded against, and it is matter of no legal moment which is taken first, or that prosecution is carried on only against one at a time.

*Nuisances : Manufactures : Forges : Steam hammers : Residences : Injunction.* The proofs in this case showing that the business of forging, conducted by the defendant on a large scale, in inexpensive wooden buildings, situated in close proximity to a neighborhood substantially used and adapted to dwellings, and built up with costly and valuable residences, seriously injured the complainants, who were the owners and occupants of such residences, both in person and property, by means of the smoke and soot from the large quantity of bituminous coal used, settling in clouds upon their premises, and blowing and sifting into their dwellings, and by means of the noise and jarring of the heavy steam hammers employed, disturbing the peace, affecting the health, annoying those who are well, and injuring the sick, and, in case of the nearest dwellings, substantially damaging their foundations and walls, make out a clear case for relief by injunction as against a nuisance.

ROBINSON *v.* BAUGH.

*Sic utere tuo ut alienum non laedas.* The doctrine that every person must so use his own as not to cause injury to his neighbors, with its application and limitations, is considered and discussed.

*Nuisances: Manufacturing: Relative damages: Injunction.* The relative cost of the removal of defendant's business and improvements, to the value of the adjacent property, which the carrying on of the business as located injures, is considered as an element in determining whether the business should be enjoined as a nuisance, at the instance of the owners of such adjacent property.

*Nuisances: Lawful business: Suitable location: Annoyances: Discomforts.* However lawful the business may be in itself, and however suitable in the abstract the location may be, these things cannot avail to authorize the carrying on of the business in a way which directly, palpably and substantially damages the property of others, at least in the absence of any thing conferring any prescriptive right or of any grant, covenant, license or privilege; yet, on the other hand, a resident of a trading or manufacturing neighborhood is bound to submit to such ordinary personal annoyances and little discomforts as are fairly incidental to legitimate trading and manufacturing carried on in a reasonable way.

*Heard January 27. Decided January 29.*

Appeal in Chancery from Superior Court of Detroit.

*Walker & Kent,* for complainants.

*Gartner & Burton* and *Alfred Russell,* for defendant.

GRAVES, CH. J.

The complainants, nineteen in number, being separate owners and occupants of valuable residences in a small specified district in Detroit, substantially used for dwellings, have united in a complaint against the defendant, in which they maintain that he uses certain premises he occupies, not far off on Woodbridge street, in such manner as to be a nuisance, and specially and greatly injurious to them in property, comfort and health.

His business is that of forging, which he conducts in low, wood buildings, and on a large scale. He employs steam and consumes a large amount of bituminous coal. He works four steam hammers, one of which weighs thirty-five hundred pounds. The smoke and soot from his works are often borne by the wind in large amounts to the premises of complainants, and sometimes enter their dwellings by the chimneys and the slight cracks by the doors and win-

dows, in such measure as to be extremely offensive and harmful, and the noise from his steam hammers is frequently so great at complainants' places as to be disagreeable and personally hurtful, whilst the jar produced by the largest greatly annoys complainants and their families, and seriously disturbs the sick, and in some cases causes substantial damage to dwellings.

The complainants pray that defendant may be enjoined from carrying on his works in a way thus wrongful and injurious.

Upon answer and proofs, the court below made a decree in accordance with the prayer of the bill, and the defendant appealed.

He objects first, that the case is not rightly constituted, on the ground that complainants are separate owners with distinct property interests, and the attorney general is not a party.

Upon the circumstances of this case, we think the objection not maintainable. The rights asserted by complainants, and for which they ask protection, are alike, and the grievance stated in the bill and charged against defendant has one source, and operates in the same general manner against the agreeing and equivalent rights of all the complainants. If his works as conducted are a nuisance to complainants, they are a nuisance to all in the same way. The case presents no diversity to cause embarrassment in dealing with it, and we should only sacrifice substance to useless form by giving any sanction to the point, if there was no authority to favor its rejection. But without going far we are able to cite such authority.—*Scofield v. Lansing,* 17 *Mich.,* 437 ; *Middleton v. Flat River Booming Co.,* 27 *Mich.,* 533 ; *Peck v. Elder,* 3 *Sandf. Sup. C. R.,* 126, and opinion of the chancellor in a note ; *Reid v. Gifford, Hop. Ch.,* 416.

It is next objected, that the bill should have been sworn to. It was framed as a mere pleading, and was not constructed upon the theory that it might be requisite to use

it as a sworn statement on which to base an application for preliminary relief.

The only relief contemplated was such as would be grantable on final hearing, and the case exhibited is within the ordinary jurisdiction, and stands on no peculiar ground which might call for a verification of the bill. The point is not warranted by reason, or the course of the court.— *Moore v. Cheeseman, 23 Mich., 332; Atwater v. Kinman, Har. Ch., 243.*

A further objection is, that a trial at law was needful before seeking the aid of equity.

This position is, not maintainable; The legislature have expressly declared that equity shall have jurisdiction " *in all matters* concerning nuisances where there is not a plain *adequate* and *complete* remedy at law, and may grant injunctions to stay or prevent nuisances."—*Comp. L. 1871,* § *6377.* And this language implies that the jurisdiction may not be merely assistant, but is independent and ample in those cases where a remedy at law would not be *plain, adequate* and *complete.* That the law could afford no such remedy here, is manifest. Even before this declaratory provision the chancellor asserted the jurisdiction fully.—*White v. Forbes, Walk. Ch., 112;* see also *Soltau v. DeHeld, 9 E. L. & E., 104.*

When the cause is thus within the jurisdiction, the authority of the court is plenary, and is not dependent upon steps at common law. If, on a view of the circumstances, the court feels that there ought to be a finding, it may in its discretion require one, but is not bound to do so.

The defendant further urges that some of complainants have establishments not far away, which are liable to objections similar to those made against his, and that therefore he ought not to be enjoined at their instance.

Assuming the fact to be as supposed, it affords no valid answer for him. That complainants are distinct wrongdoers in the same way, neither lessens his wrong or disables them from making legal complaint of it. Their wrong-

doing must be tried by itself. It cannot be investigated and decided in the proceedings against him.

The point is also taken, that complainants so far acquiesced in defendant's operations, that the court ought not to listen to their application to enjoin him.

His operations which are objected to were commenced only about two years before the suit, and the large hammer was not purchased until a year later.

And it appears from the case that complaint was made to the common council, on the part of some of complainants, and, as I infer, some months before the suit, of the injurious character of defendant's business, and that he was informed of it, and moreover, that one of complainants, Mr. Robinson, complained in person, a considerable time before the bill was filed.

Indeed, the evidence is clear, that defendant knew at an early day, that his operations were regarded by complainants, or some of them, as wrong and hurtful, and that they were not assenting.

The facts, as to time and circumstance, are strong to show that there was no acquiescence, either in the sense of conferring a right on him to continue, or in the sense of depriving complainants of the right to seek and obtain equitable interference.

Looking into the record we notice that as a further ground of defense, the answer specifies several establishments in the vicinity which are claimed to be as detrimental in their operations as that of defendant. But this, if true, cannot aid him. If others in the same neighborhood are maintaining nuisances, and even nuisances of similar character, it is no reason for refusing to stop one maintained by him, or, what is the same thing, for allowing him to continue his nuisance because other independent parties are doing wrong in the same way.

When nuisances, or establishments alleged to be nuisances, exist in separate hands, they must be proceeded against separately, and it is a matter of no legal moment which is

taken first, and which last; nor is it of any legal conse-
quence that prosecution is carried on only against one at
the same time.—*Meigs v. Lister, 23 N. J. Eq., 199 ; St.
Helen's Smelting Co. v. Tipping, 11 H. L. Cases, 642 ; Thorpe
v. Brumfitt, L. R., 8 Ch. Ap., 650, 6 Eng. R., 554.*

Coming to the main controversy, and considering the
locality, character and value of defendant's works, and
the way they are used, and considering the locality, value
and character of complainants' dwellings, and the effect pro-
duced by defendant's operations, does the proof clearly
establish the charge made by complainants? We think it
does.

The general principle is that every person must so use
his own as not to cause injury to his neighbors, and this
principle is intelligible enough. But there is often con-
siderable difficulty in its application; and where the ques-
tion relates to the uses to which near proprietors choose to
put their separate and respective holdings, and especially
in places where the population is dense, and pursuits and
tastes are various, or in manufacturing and mining districts,
the difficulty sometimes becomes serious.

In such instances the question can be satisfactorily
solved in no other way than by taking a fair practical
view.

The subject cannot be safely dealt with by resorting to
subtle refinements and nice theories. Extreme claims must
give way, and men must yield somewhat in a spirit of ac-
commodation and concession, and measurably recognize and
respect the actual exigencies of time, place and circum-
stances. One living in the country must accept country
life, and one living in a city must accept city life. Those
activities which are right in themselves and belong to the
neighborhood and are reasonable in their mode may not
be quite agreeable to the fastidiousness of some, or the
special or peculiar susceptibilities of others, but those thus
affected must bear their little discomforts if they choose to
stay where they are so caused, and a resident of a trading

or manufacturing neighborhood must submit to such ordinary personal annoyances as. are fairly incidental to such legitimate trading and manufacturing as is there carried on in a reasonable way; and of course the existence of these slight personal annoyances can afford no ground for saying that the concerns causing them are not suitably situated, and are therefore nuisances.

But the requirement to bear thus much may not be extended to extraordinary personal hurts or discomforts caused by means which, beyond " fair controversy, ought to be regarded as exceptive and unreasonable," and it cannot "apply to circumstances the immediate result of which is sensible injury to the value of property."   It is not appropriate to say that the injurious work is fitly and rightly located, and that the business is lawful in itself, when the ground of complaint is, that it causes a real and serious direct injury to the property of another.   However lawful the business may be in itself, and however suitable in the abstract the location may be, they cannot avail to authorize the conductor of the business to continue it in a way which directly, palpably and substantially damages the property of others;   unless, indeed, the operator is able to plant himself on some peculiar ground of grant, covenant, license or privilege, which ought to avail against complainants, or on some prescriptive right, and which in this country can rarely happen.   There is nothing of the kind here.

In the present case the proof is clear that the defendant's works are so situated and conducted as to cause wrong and injury in regard to both person and property, and to an extent which justifies the complainants in objecting as they do.   The grievances shown are not such in their cause, nature and objective effects, as to warrant the court in saying they must be borne in deference to practical exigencies.

The case of *Gilbert v. Showerman, 23 Mich., 448*, is, however, cited as authority against the decree made by the court below.   But the governing facts there were entirely different. The complainant's residence was situated in the very heart of

a quarter substantially, and, indeed, almost wholly abandoned as a spot for living, and devoted to diverse trades and noisy occupations. He resided in the upper story of his building, and had been accustomed to rent the lower floor as a store or warehouse, thus himself recognizing that the locality was so completely a business one that he might naturally and properly derive profit from the use of his own rooms under him as a noisy business establishment. The mill of which he complained was in an adjoining building, and the evidence conduced to prove that it was well constructed, and that the machinery was run with care, and was really less noisy than some other near occupations. The mode of working was in itself unexceptionable, and the substantial matter of complaint, as shown by the evidence, was the personal discomforts experienced by complainant and his family, in the chambers where they resided adjacent to the mill.

As he chose to stay in a building partly given up to business, and in the midst of a trading and manufacturing district, he was not entitled to enjoin the legitimate occupations, reasonably and fairly conducted about him, because their natural incidents were annoying and unpleasant to him and his family.

Here the circumstances are wholly different. The defendant's works have been going but a short time, are not very expensive, and not of a permanent character. They are placed on leased ground, under a short term, and are practicably removable without very great inconvenience or cost. Other sites reasonably eligible in respect to the profitable prosecution of the business may be had, and where surrounding proprietors would not be wronged.

On the other hand, the complainants' dwellings are in a part of the city appropriated almost wholly to residences, and the place is among the most suitable and desirable for the purpose. The buildings are generally costly and substantial, and some of them have grounds expensively improved. The total value is very large, and in comparison

21 MICH.—38.

with it the value of defendant's establishment proper is a mere trifle. The case of *Gilbert v. Showerman* cannot apply.

On the whole, as already stated, we think the complainants have clearly made out their rights to the relief prayed, and that the decree below must be affirmed, with costs.

COOLEY, and CAMPBELL, JJ., concurred.

CHRISTIANCY, J., did not sit in this case.