THE PEOPLE v. THE DETROIT WHITE LEAD WORKS (A CORPORATION), FORD D. C. HINCHMAN, HORACE M. DEAN, AND FORD H. ROGERS.

*Nuisances—Offensive odors—Municipal corporations—Ordinances— Certiorari.*

1. No case has been cited, and we think none can be found, sustaining the continuance of a business in the midst of a populous community, which constantly produces odors, smoke, and soot of such a noxious character, and to such an extent, as to produce headache, nausea, vomiting, and other pains and aches injurious to health, and to taint the food of the inhabitants.

2. Where after the establishment of a manufacturing business the adjacent *vacant* land is utilized by the owners for *residence* purposes, to whom its continuance becomes a nuisance, the business must give way to the rights of the public, and those prosecuting it must devise some means to avoid the nuisance, or must remove or discontinue such business.

3. A corporation is subject to prosecution for creating and maintaining a nuisance, as are its officers, who need not have been

actively engaged in work upon the premises, the same being
carried on by employés.

4. A city ordinance prohibiting the creation or maintenance of a
   nuisance is not invalid or unconstitutional because the general
   statutes of the State provide for the conviction and punishment
   of those guilty of the like offense. *People v. Hanrahan*, 75
   Mich. 611.

5. While the facts as found and returned in answer to a writ of
   *certiorari* issued to review proceedings leading to the convic-
   tion of the defendants in this case by the recorder's court of
   the city of Detroit, for creating and maintaining a nuisance,
   are held to be binding, and to call for the affirmation of such
   conviction and the consequent judgment, the result thus reached
   will not be considered as binding upon the appellate court in
   another proceeding in which the evidence and facts may be
   fully presented. It is further suggested that the course pur-
   sued in *Robinson v. Baugh*, 31 Mich. 290 (by bill in chancery),
   is the proper one, as being much fairer to those engaged in a
   legitimate business.

*Cerliorari* to the recorder's court of Detroit to review
proceedings resulting in the conviction of respondents for
maintaining a nuisance contrary to the provisions of a city
ordinance. (Swift, J.) Argued May 18, 1888, and re-
argued June 26, 1890. Decided October 10, 1890. Judg-
ment affirmed. The facts are stated in the opinion.

*Edwin F. Conely*, for respondents.

*Henry M. Cheever*, *Charles W. Casgrain*, *Charles S.
McDonald*, and *John W. McGrath*, for the people.

GRANT, J. This case is brought to this Court by writ
of *certiorari* from the recorder's court of the city of
Detroit.

The defendants were convicted of unlawfully and will-
fully creating and maintaining a nuisance, consisting of
the creation and emission of unwholesome, offensive, and
nauseating odors, smells, vapors, and smoke, to the great
damage and common nuisance of all people living in the
neighborhood thereof, and of all people passing and repass-

ing on the streets and alleys adjacent thereto, contrary to an ordinance of the city in such case made and provided, being section 5, chap. 55, Rev. Ord. 1884. The ordinance in question is set forth in the return of the judge to the writ.

The defendant the Detroit White Lead Works is a corporation organized under the laws of the State. Defendant Hinchman is president, defendant Dean is vice-president, and defendant Rogers is treasurer and manager. The defendants Hinchman, Dean, and Rogers were fined $1 each, and the defendant the Detroit White Lead Works $10 and costs. No other penalty was imposed.

The following is the return of the court to the writ. We give it nearly in full, on account of the importance of the case:

"The testimony tended to show the following: Eighteen to twenty years prior to the filing of the complaint, a paint manufactory was started by private parties on the north side of Jones street, directly opposite and about fifty feet from the place described in the complaint. The business was that of mixing white lead, oils, and colors for use as paints. The manufacture of white lead, or carbonate of lead, as by corrosion, was never carried on here. Leads, oils, and colors were merely mixed. This business was continued at this point about ten years, when it was moved across the street to the place named in the complaint. Here it was pursued by private parties until December, 1880, when the defendant the Detroit White Lead Works, a manufacturing corporation organized under laws of this State, succeeded to the business and property. The Detroit White Lead Works continued the same business uninterruptedly from the time last mentioned to and including the time of trial. The method of mixing lead, oils, and colors remained the same, though carried on with improved machinery, somewhat larger, better, and more cleanly buildings, and increased trade. No corrosive process was used, the dry, heavy carbonate of lead (600 lbs to the barrel) being mixed at once with oil, and thereafter remaining in a moist or semi-fluid condition. Whiting was also used (weight 250 lbs. to the barrel) in the manufacture of putty. Also various well-known earths and clays were used in making paints.

"In 1882, the manufacture of varnish and also liquid driers for use in the manufacture of paints was added, and was continued without interruption to and including the time of trial. In the manufacture of varnish and driers, various resinous gums, asphaltum, boiled linseed oil, and naphtha were used. The gums were melted and the oil boiled over a fire-place, and directly under a chimney carrying away the fumes or vapors into the air. When cooling, the large kettles were put under a ventilating shaft, thus carrying away any fumes or vapors. The machinery was used only in the mixing rooms, and was propelled by means of a boiler and engine, which was also used in supplying heat to the buildings. The coal used was, in the main, hard, though soft coal was also used. The furnace was supplied with a smoke consumer. The buildings are brick, cover about four lots, are three stories high, and, in addition to the above, are used for storage, office, printing, labeling, loading, and the ordinary incidents of a large manufactory and business.

"When the business was originally started, but few persons lived near, the property all around being vacant for the most part. Subsequently, population thickened, and at the time of the complaint the manufactory was surrounded with considerable resident population, though but a short distance from Michigan avenue,— a street devoted wholly to business. The resident population were largely tenants, most of whom rented from month to month or for short periods. Nearly all of the surrounding buildings had been built since the manufactory originally started. During the time covered by the complaint, the business, in all respects, had been carried on in a careful and prudent manner, and nothing had been done by those managing it that was not a reasonable and necessary incident to the business. No complaint had been made against the business, or any one running it, in any court before. The defendant Hinchman was president of the corporation. The evidence did not otherwise connect him with the business or its operation. Rogers and Dean were actively engaged in managing and operating it. Shotwell was secretary, and kept and had charge of the books.

"The city attorney, in behalf of the city of Detroit, introduced testimony tending to show that odors of a disagreeable and unpleasant character had been experienced by residents in the vicinity of the works. These odors were described by witnesses as 'the smell of paint,' 'paint smell,' 'heavy,' 'the smell of varnish,' 'resinous smell,' and piny.' Residents in the vicinity of the works

testified that, during the time mentioned in the complaint, they had been constantly annoyed by odors, smoke, and soot which came from the works and entered their houses, producing, as they testified, headache, nausea, vomiting, and other pains and aches injurious to health; that in warm weather, to keep out the smoke and soot, they were compelled, to their great discomfort, to close the doors and windows; that smoke settled on their furniture, and on their clothes which had been washed and hung out to· dry, and which they were obliged to wash again; and in some instances tainted their food. Many of the witnesses claimed that the odors were nauseating, others very disagreeable, while some did not mind it.

"On behalf of the defendants, testimony was introduced tending to show that nothing of an unhealthful or injurious character eminated from the manufactory, and that the only 'paint smell' there could be was simply the smell caused by the boiling linseed oil about once a week, in the manufacture ·of varnish; that no smells eminated from the other parts of the factory at all, and could not; that the men, women, and girls in the factory were in excellent health, and had never been ill from being there; that one witness, Mr. H. A. Champion, member of the committee to investigate the business in question, visited the place 31 times before he ·could detect an unpleasant odor, and this in warm weather; and that there was nothing unwholesome or injurious to health about. the business.

"The ordinance under which the complaint was made and the trial was had reads as follows:

"'Sec. 5. No owner or occupant of any grocery, cellar, tallow-chandler shop, soap, candle, starch, or glue factory, tannery, butcher-shop, slaughter-house, stable, barn, privy, sewer, or other building or place, shall allow any nuisance to exist or remain on his or her premises; nor shall any person, persons, or corporation, operating, owning, occupying, or using any public or private street, alley, way, or any premises whatever, within the limits of the city of Detroit, create or maintain any nuisance thereon.'

"The common council of the city of Detroit has never prescribed any territorial limits within which the business in question, or other like business, should be conducted or carried on."

The court filed a written opinion and finding, of which the material part is as follows:

"·The defendant corporation was established in 1880, and succeeded to the business previously carried on by

parties not incorporated under the same name as that of said corporation, and was started some fifteen or sixteen years ago. In 1882 the corporation added to their business the making of varnish and driers. There is nothing to show that the business of the lead works was not properly and skillfully conducted, or that the alleged nuisance might have been avoided by any greater care.

"The part of the city wherein the corporation is carried on is principally occupied by dwelling-houses, and many residents in the vicinity of the lead works, during the time mentioned in the complaint, have been constantly annoyed by odors, smoke, and soot which came from the lead works and entered their houses, and produced headache, nausea, vomiting, and other pains and aches injurious to health. In warm weather, to keep out the smoke and soot, they were compelled, to their great discomfort, to close their doors and windows. The smoke and soot settled on their furniture, and on their clothing which had been washed and hung out to dry, and which they were obliged to wash again, and in some instances tainted their food.

"The counsel for defendants claimed on the hearing that the ordinance under which this complaint was made, so far as these defendants are concerned, is not authorized by the charter, and also claimed, or rather suggested, that the common council cannot constitutionally be authorized to punish, under an ordinance, that which, under the general law of the State, can be punished as a crime. The defendants' counsel also claimed that the case, as proven, is not within the ordinance.

"I am unable to agree with the defendants' counsel with regard to these propositions. I find the complaint as made out against all the defendants, except the defendant Shotwell, whom I find not guilty, and the others guilty."

The charter of the city of Detroit gives to the common council power to provide for the preservation of the general health of the city; to make regulations to secure the same; to prohibit, prevent, abate, and remove all nuisances in said city; to punish the authors or maintainers thereof; to compel the owner or occupant of any unwholesome or nauseous house or place to cleanse or abate the same,

whenever necessary for the health, comfort, or convenience of the inhabitants of said city; to prohibit and prevent any person from keeping or having on the premises owned or occupied by him any article, substance, or thing that is unwholesome or nauseous. Similar powers are conferred upon municipal corporations of the State by general statute. How. Stat. §§ 1678, 2572, 2573, 2576, 2634.

The facts found and returned by the recorder's court clearly establish a nuisance, according to all the authorities. These facts so found are conclusive in this Court, and we can only apply the law to the facts. Counsel for defendants cannot, therefore, seriously contend that we can enter into a discussion and determination of that question, especially as the evidence is not before us.

Defendants are not aided by the fact found by the court that, during the time covered by the complaint, the business, in all respects, had been carried on in a careful and prudent manner, and nothing had been done by those managing it that was not a reasonable and necessary incident of the business; nor by the further fact that, when the defendant company commenced its business, the lands in the vicinity of its works were open common. It is undoubtedly true that the defendants, or their predecessors, established their works at a point remote from habitation, possibly in recognition of the fact that such a business was at least not pleasant, if not injurious, to the health and enjoyment of those living near it. The city of Detroit has extended to the defendants' works, and the owners of adjoining lands have erected dwellings thereon. This they, of course, had the legal right to do. The defendants cannot be protected in the enjoyment of their property, and the carrying on of their business, if it becomes a nuisance to people living upon the adjoining properties, and to those doing legitimate business with them. Whenever such a business becomes a nuisance,

it must give way to the rights of the public, and the owners thereof must either devise some means to avoid the nuisance, or must remove or cease the business. It may not be continued to the injury of the health of those living in its vicinity. This rule is founded both upon reason and authority. Nor is it of any consequence that the business is useful or necessary, or that it contributes to the wealth and prosperity of the community. Wood, Nuis. § 19; *Queen v. Train*, 2 Best & S. 640; *Works v. Railroad Co.*, 5 McLean, 425; *Respublica v. Caldwell*, 1 Dall. 150; *Ross v. Butler*, 19 N. J. Eq. 296; *Robinson v. Baugh*, 31 Mich. 290.

It is true that, in places of population and business, not everything that causes discomfort, inconvenience, and annoyance, or which, perhaps, may lessen the value of surrounding property, will be condemned and abated as a nuisance. It is often difficult to determine the boundary line in many such cases. The carrying on of many legitimate businesses is often productive of more or less annoyance, discomfort, and inconvenience, and may injure surrounding property for certain purposes, and still constitute no invasion of the rights of the people living in the vicinity. Such a case was *Gilbert v. Showerman*, 23 Mich. 448. A case similar in its facts was before this Court in *Robinson v. Baugh*, 31 Mich. 290, which was distinguished by the Court from *Gilbert v. Showerman*. In the former case the business was legitimate and necessary. The suit was brought in equity to enjoin the business at the place where carried on. The facts were that smoke and soot from defendant's works were often borne by the wind in large amounts to the premises of the complainants, and sometimes entered their dwellings by the chimneys, and through cracks by the doors and windows, in such measure as to be extremely offensive and harmful, and the noise so great as to be disagreeable,

and positively hurtful, the jar annoying and disturbing the sick, and in some cases causing substantial damage to dwellings. The Court laid down the rule (page 296) as follows:

"However lawful the business may be in itself, and however suitable in the abstract the location may be, they cannot avail to authorize the conductor of the business to continue it in a way which directly, palpably, and substantially damages the property of others, unless, indeed, the operator is able to plant himself on some peculiar ground of grant, covenant, license, or privilege which ought to prevail against complainants, or on some prescriptive right, and which in this country can rarely happen."

No case has been cited, and we think none can be found, sustaining the continuance of a business in the midst of a populous community, which constantly produces odors, smoke, and soot of such a noxious character, and to such an extent, that they produce headache, nausea, vomiting, and other pains and aches injurious to health, and taint the food of the inhabitants.

All the defendants were properly convicted. The officers of the company are jointly responsible for the business. It is not necessary to conviction that they should have been actually engaged in work upon the premises. The work is carried on by employés. The directors and officers are the persons primarily responsible, and therefore the proper ones to be prosecuted. A fine can be collected against the defendant company, and therefore it is subject to prosecution.

The ordinance under which defendants were convicted is not invalid nor unconstitutional because the general statutes of the State provide for the conviction and punishment of the like offenses. This was settled in this State in the case of *People v. Hanrahan*, 75 Mich. 611. See, also, Cooley, Const. Lim. 199; *State v. Ludwig*, 21

Minn. 202; *Shafer v. Mumma*, 17 Md. 331; *St. Louis v. Bentz*, 11 Mo. 61; *St. Louis v. Cafferata*, 24 Id. 94; *Blatchley v. Moser*, 15 Wend. 215; *Levy v. State*, 6 Ind. 281.

We infer that the defendants have a valuable plant, in which they have invested considerable amounts of money. Courts should abate a legitimate business of such magnitude as a nuisance only upon clear and convincing proof. We are not satisfied that the method chosen in this case to test the question was the fairest towards the defendants. While no other conclusion than affirmation of the judgment is possible under this record, we deem it proper to say that we shall not consider the result now reached as binding upon us in another proceeding where the evidence and the facts may be fully presented. We consider the course pursued in *Robinson v. Baugh*, 31 Mich. 290, the proper one, as it certainly is much fairer to those occupied in a legitimate business.

Judgment affirmed.

The other Justices concurred.