State vs. Fourcade.

---

No. 11,148.

STATE OF LOUISIANA VS. M. FOURCADE.

1. The powers conferred upon the Common Council of New Orleans by the 7th section of Act No. 20 of 1882 (the city charter) are not suspended by the provisions of Act No. 82 of 1882.

2. The Legislature may delegate to municipal corporations power to adopt and enforce ordinances on matters of special local importance though general statutes exist relating to the same subjects. The same act may constitute a crime against the public law of the State and also a petty offence against a municipal regulation. The two offences in such a case being different each may be punished without violation of the constitutional prohibition against placing a person twice in jeopardy for the same offence.

3. Violations of municipal ordinances constitute a class of offences that are in general throughout the country proceeded against summarily, and the right of trial by jury can not be constitutionally demanded.

4. The question of fact which the Supreme Court is required under Act 81 of the Constitution of 1879 to examine into in respect to the legality or constitutionality of a fine, forfeiture or penalty are those which are necessary to be investigated for the purpose of determining those questions as to the fine, forfeiture or penalty imposed IN an ordinance of a municipal corporation, not those which if the ordinance be upheld go to establish the guilt or innocence of the accused UNDER the ordinance.

5. The General Assembly in conferring upon the Common Council of New Orleans the power it did in its charter, contemplated that it would adopt a standard of adulteration as to drinks, and that adoption by it not being shown to be unreasonable or arbitrary, or as passing beyond a fair measure of correction for the evil against which it seeks to guard, is upheld.

A PPEAL from the First Recorder's Court of New Orleans. *Whitaker, J.*

*Louque & McGloin* for Board of Health, Plaintiff and Appellee:

1. Act 82 of 1882, regulating adulteration of food, is a general statute, not impairing the force of Act 20 of 1882, in so far as the latter empowers the city of New Orleans, within its own limits, to deal with the same matter. 39 An. 513; also State vs. Callac, recently decided.

2. A municipality with legislative sanction may impose a penalty upon any act committed within its own limits and against the health or peace of its citizens, even though the State, by statute, has likewise imposed a penalty upon the same act. Nor does prosecution under one of these prohibitions bar prosecution for the same act under the other. American and English Encyclopedia of Law, Vol. 17, p. 252; Cooley, Constitutional Limitations, p. 242 (199); Dillon, Municipal Corporations. Sec. 301; 46 N. W. Rep. 735; 30 An. 454.

3. The city of New Orleans is competent to fix a standard for pure milk, and to prosecute those selling milk which falls below such standard.

4. A proceeding before a recorder of the city of New Orleans for the enforcement of a police ordinance of the city is not a criminal proceeding, hence Arts. 5, 6 and 8 of the Constitution of this State do not apply to them. 4 An. 337; 2 La. 427; 43 An. 836; 42 An. 1112; 42 An. 272; 35 An. 1193.

5. A chemist's certificate of analysis, if he be a sworn officer, is admissible in evidence in prosecutions for milk adulteration. 11 Allen (Mass.), 264.

6. In prosecutions of this kind it need not be declared or shown that the accused was cognizant of the fact that the milk sold was adulterated. 132 Mass. 11; 103 Mass. 444; 9 Allen, 484; 10 Allen, 199; 11 Allen, 264; 10 R. I. 258; 6 Park, Cr. (N.Y.) 355.

7. Vendors of milk may be compelled to furnish sample for inspection, and this without compensation, offered or made, for such samples taken. 132 Mass. 14; 2 Metcalf, 329, 337; 126 Mass. 269; 126 Mass. 439, 441; 6 Gray, 434; 12 Sup. Ct. Rep. 257.

*P. L. Fourchy* and *Albert Voorhies* for Defendant and Appellant:

1. Broad distinction in Constitution, Art. 81, between, on the one hand, appeals from municipal courts to the Supreme Court in cases, civil and criminal; and, on the other, appeals from State courts in criminal offences.
2. Act of 1882, No. 82, does not repeal any portion of the city charter; but when the State subsequently exercises herself some police power delegated among others to the city, the latter's right to exercise her delegated authority is, for the time being, and to the extent of the State action, suspended or superseded.
3. The Act of 1882, No. 82, applies to the whole State, and more particularly to the parish of Orleans, wherein is located the State Board of Health. The whole statute teems with provisions which virtually, and *eo nomine*, require the action of that board within the limits of the city of New Orleans to enforce this very statute.
4. When an act is denounced by the State as a State offence, in the exercise of police powers, the municipality has no right, in the exercise of police powers, to duplicate the offence by converting it also into a municipal offence. *Non bis in idem.* State vs. Miller, 7 An. 651, is a correct exposition of the law in this respect.
5. The city of New Orleans has no power but such as is delegated to her by the State, and the State may at any time, in its own discretion, withdraw, modify, suspend or supersede, for a limited time or absolutely, the exercise of such delegated power.
6. The standard of adulteration fixed by the State is binding upon the whole State, and more particularly in the city of New Orleans. The arbitrary and so-called scientific standard or formula of adulteration adopted by the city is illegal, because—
First, it is in conflict with the standard fixed by the State; and secondly, the city ordinance establishes a presumption *juris et de jure* of guilt against any one who does not literally comply with its provisions.
7. The act denounced by the ordinance is an offence, as much so as when denounced by the State. In the former case it falls within the criminal jurisdiction of city recorders, while in the other within the criminal jurisdiction of State courts.
8. In the State courts there is jury trial, with all the solemnities of criminal prosecutions.
In the municipal courts there is summary trial without jury.
In both instances, however, there is a criminal prosecution, and never a civil proceeding.

The opinion of the court was delivered by

NICHOLLS, C. J. The defendant was charged with having on the 20th November, 1892, violated Ordinance 6596, C. S., by selling watered or adulterated milk in the city of New Orleans.

Through his counsel he pleaded an exception or demurrer in which he declared that he was ready and willing to be tried under the laws of the State of Louisiana for the State offence charged against him as a municipal offence, but that he demurred to the pending municipal prosecution on the grounds—

1. That said city ordinance under which this prosecution is carried on is unconstitutional and illegal, as it conflicts with the Constitution of Louisiana, Arts. 5, 6, 7, 8, 92 and 155—as it conflicts also with acts of Louisiana of *1880*, No. *20*, and of acts of *1882*, No. *82*, and other State law in *pari materia*.

2. That said city ordinances No. 6022 (1879), No. 6533 (1880), No. 6596 (1892), annexed to the exception, are in conflict with the federal Constitution, Amendment 14, Sec. 1, in this, that it deprives the accused as one of a class of retail milk vendors from the equal protection of the laws of the State; that it singles out one occupation (milk commerce) and submits it as a class to a special mode of prosecution before a recorder's court without the benefit of jury, while on the other hand all other classes or occupations are to be prosecuted for a State offence and to be tried by jury.

3. That the same act imputed to defendant under the laws both organic and ordinary of the State can not be made a double offence punishable twice, either simultaneously or otherwise; that the State laws can not create such an anomaly, nor can the municipal ordinance of a creature of the State having no authority but that which is specially delegated to it by the State itself be an exception, but on the contrary the case is more objectionable.

4. That said city ordinance is *ultra vires* in so far as it is in conflict with acts of 1880, No. 20, and acts of 1882, and other State laws in *pari materia*, and also to the extent that it attempts to duplicate the action of the State with the new methods of prosecution, and that in face of these statutes punishing the adulteration of milk as a State offence the municipality can not constitutionally make it a municipal offence, and that said First Recorder's Court is without jurisdiction in the premises.

5. That the accused can not thus be put twice in jeopardy for acts which, if true, would constitute the same offence for which he will be undergoing trial simultaneously in a State court and a municipal court.   Art. 5, Const.

6. That by said municipal ordinance the accused is deprived of liberty and property without due process of law.   Art. 6.

State vs. Fourcade.

7. That the municipal ordinance divests the accused of his vested rights of property and in merchandise without due process of law and without adequate compensation previously made (Art. 155), and makes it an offence for him not to give away his property at the bidding of a police officer.

8. That said ordinance establishing a test in the adulteration of milk is unconstitutional and illegal, in violation of the laws of the State of Louisiana, and more particularly of the act of 1882, No. 82.

This demurrer was overruled by the court.

Defendant then filed a second demurrer to the effect "that *city ordinances* No. 6022, A. S.; No. 6533, A. S., and No. 6596, A. S., are illegal, because the State of Louisiana, by acts of 1880, No. 20, and by acts of 1882, No. 82, and by other acts in *pari materia*, has taken and resumed exclusive control and jurisdiction for itself of all the matters of offence and punishment contained in said State legislation in antagonism with or on the same subject matter of these municipal ordinances; that the passage and effect of said statutes are to render illegal, null and void for the time being said ordinances, and that as long as said statutes are in force the said city ordinances are branded with illegality and unsusceptible of enforcement."

The court overruled these objections.

On trial of the case on its merits the court found the accused guilty as charged and sentenced him to pay a fine of $25, and in default of payment to imprisonment in the parish prison for a term of thirty days.

He has appealed to this court.

The first point made in defendant's brief is that by reason of his having in the lower court drawn in question the constitutionality and legality of the ordinance, for the violation of which he has been convicted, this case has been brought to us in all its details of law and fact, including the evidence taken on the trial on which—*assuming the ordinance to be legal and constitutional*—the recorder founded his judgment touching the guilt of the accused under it.

In support of that position he relies upon the phraseology of Art. 81 of the Constitution of 1879 and upon an expression found in the case of State vs. Dean (not yet reported), where, referring to that article in connection with the cause then before us, we said: "The case must involve a question of the unconstitutionality or the illegality of the city ordinance under which the defendant and appellant

46

is being prosecuted, and hence the constitutionality of the fine or penalty which is imposed is drawn in question, otherwise the appeal is not examinable on either law or fact. If, however, the appeal presents such a question of constitutionality or legality of ordinance and penalty, *the fact* as well as the law are open to examination."

*Article 81* of the Constitution declares that the Supreme Court's jurisdiction shall extend " to all cases in which the constitutionality of any tax, toll or impost whatever, or of any fine, forfeiture or penalty imposed by a municipal corporation shall be in contestation, whatever may be the amount thereof, and in such cases the appeal on the law and the fact shall be directly from the court in which the case originated to the Supreme Court."

Counsel of defendant is mistaken in giving to the sentence in the case of the State vs. Dean the scope he does. Only a few months prior to this we had said in State vs. Callac (*Ante*, p. 27), which was an appeal from a conviction under a city ordinance: "In such case our jurisdiction is confined to an examination and determination of the legality and constitutionality of the ordinance under which said fine and imprisonment were imposed. With the evidence in the case on which the recorder founded his judgment we have nothing whatever to do."

The only object the court had in the Dean case was to show that as presented to it there was involved in it neither questions of law nor of fact under Article 81 of the Constitution. When it declared that should a case come before it involving a question of law or of fact, or of both under that article, it would deal with it, the court simply followed the wording of the article itself.

The fine, forfeiture or penalty whose constitutionality or legality this court is directed to examine into and pass upon regardless of amount is that imposed by the City Council IN the ordinance, and not that imposed by the recorder UNDER IT when legal on the evidence and facts of a special case going to show that a particular person had violated its provisions.

Were defendant's position correct this court would be converted practically into a court of appeals as to infractions of the most trivial ordinances of all the municipal corporations in the State, at the instance of persons convicted thereunder, whilst persons convicted of State crimes are permitted to appeal simply on questions of law, and then only where the punishment of death or imprisonment at

hard labor may be inflicted, or a fine exceeding $300 has been actually imposed.

The "questions of fact" which we are called upon to examine are those which are essential to be examined for the purpose of determining the constitutionality or legality of the fine, forfeiture or penalty imposed by the city itself.

A municipal ordinance imposing a fine or penalty may, from the standpoint of the regularity of all the proceedings leading up to and inclusive of its enactment, be absolutely faultless, and yet the ultimate act done or enacted may be inherently or intrinsically illegal or unconstitutional. On the other hand the latter may be perfectly unassailable, and yet the ordinance be illegal or unconstitutional by reason of some fact or circumstance connected with its passage. It may, for instance, have been presented in a wrong manner at a wrong time, or not voted for as directed by law. It is to facts of this class or character that Art. 81 of the Constitution refers when it says that "the appeal on the law and the fact" shall be directly to the Supreme Court.

The distinction between the illegality of a fine, forfeiture or penalty imposed by the municipal corporation and the correctness of that imposed by the recorder, and between the illegality of the ordinance and that of proceedings or action taken under it, is plain and broad and has been repeatedly recognized by us. The two cases already cited of State vs. Callac and State vs. Dean both refer to it.

In Favrot vs. Baton Rouge, 38 An. 230, a suit which presented the question of the legality of a tax, and in which the tax was resisted on the further ground of the illegality of the assessment and irregularities in the mode of levying and collecting the tax, this court said "it would entertain the appeal on one branch of the contestation—the illegality of the tax—and ignore the appeal on the other branch of the case."

The same doctrine is announced substantially in Gillis & Kennet vs. Clayton, 36 An. 285; Stubbs vs. Maguire, 33 An. 108; State ex rel. Rivet vs. Judge, 36 An. 286; Cobb vs. Tax Collector, 36 An. 801; Adler, Goldman & Co. vs. Board of Assessors, 37 An. 898; Minor vs. Sheriff, 38 An. 99; New Orleans vs. Schonhausen, 38 An. 237; Bush & Levert vs. Police Jury, 39 An. 899.

If on an examination of this case we find the ordinance attacked to be illegal and unconstitutional the judgment of the recorder will

necessarily have to be set aside, and defendant will have no interest in presenting to us the evidence taken on the trial; if, on the other hand, we maintain the legality of the ordinance, then in so doing we exhaust our powers and reach the limit of our inquiry.

The next position maintained by the defendant is that the city of New Orleans has no powers but such as are delegated to her by the State—that the State may at any time in its own discretion withdraw, modify, suspend or supersede for a limited time or absolutely the exercise of such delegated power, and therefore whilst the section of the city charter (Sec. 7 of Act No. 20 of 1882) which authorizes it "to prevent the sale of adulterated drinks" is not *repealed* by Act No. 82 of 1882, yet in the Act No. 82 the State took jurisdiction itself over the subject matter, and by so doing the powers of the city were *suspended*, and would remain *in abeyance* and *dormant* so long as the State statute was in force, but "awaking the moment it is repealed."

In defendant's brief it is said that the power delegated to the city *would have justified it in passing Ordinance 6596* (the ordinance attacked) *had not the State superseded or qualified* exercise of the power by *exercising it itself* in its sovereign capacity.

In the case of State vs. Labatut, 39 An. 514, and State vs. Callac, (*Ante*, p. 27), we held that the powers of the city of New Orleans under the section referred to were not repealed by the act of 1882. That statute has no *repealing clause*, and therefore it was urged that there was such a "conflict" between its terms and those of the city charter that there was an *implied* repeal, and the powers of the city could no longer be legally exercised.

The same argument is urged in the case at bar, though under a change of expressions; instead of claiming that the powers have ceased by "*repeal*," it is now contended that they are withdrawn by "*suspension*." In all the cases, however, the argument rests upon a "*conflict*" which we have held does not exist. We see no reason for altering our views as expressed in the opinions rendered in the decisions mentioned. Defendant urges that he is charged with an act which the *city* contends *she has the right to punish*, although the identical act is for the same purpose denounced and punished as a State offence and that for the same act which the State has made a State offence, the municipality has no right to institute a municipal prosecution and punish as a municipal offence, and that the State having now constituted the offence one against the State, he can not

through the instrumentality of the ordinance be deprived of his constitutional rights of being charged only through an indictment or an information, and of being tried by jury. Defendant in this position *assumes* that the offence charged as a violation of the city ordinance is *identically the same* as that which would be charged by the State for the same act through an indictment or information; and further assumes that the moment the Legislature declares that the commission of a particular act shall be punishable by the State as a State offence, the commission of the same act, which up to that time as being violative of a municipal ordinance would be, in the strictest sense, a municipal offence, and triable as such, must cease to be so triable, and the procedure in regard to the prosecution be forced to conform to the constitutional requirements which govern State crimes.

In the case of McInerney vs. City of Denver, 29 Pacific Reporter, 516, this subject received a very exhaustive examination, and from the opinion rendered therein by Mr. Justice Helm we quote very freely. He said, speaking for the Supreme Court of Colorado:

"Great reliance is placed upon the proposition that, since by general statute the act with which petitioner is charged is made a misdemeanor, punishable by indictment or information, trial by jury, etc., the ordinances involved are obnoxious to a number of constitutional provisions touching criminal cases. The Legislature may undoubtedly delegate to municipal corporations power to adopt and enforce by-laws or ordinances on matters of special local importance, even though general statutes exist relating to the same subjects. An ordinance must be authorized and must not be repugnant to a statute over the same territorial area; but if there be no other conflict between the provisions of the statute and ordinance save that they deal with the same subject, both may be given effect. The resulting or correlative doctrine is now too firmly established to admit of serious question: that the same act may constitute two offences, viz.: a crime against the public law of the State and also a petty offence against a local municipal regulation. The weight of authority likewise fully sustains the view that a prosecution and punishment for one of these offences is no bar to a proceeding for the other, though if it be not so provided by statute every fair-minded judge will, when pronouncing judgment in the second prosecution or proceeding, consider a penalty already suffered. Since

the act constitutes two offences against separate jurisdictions, it is analogous to those cases where the same act is punishable under a congressional statute and also under a State law. The offences being different there is no violation of the constitutional inhibition against putting one twice in jeopardy for the same offence."

" These views are sustained by the following among other authorities :

" Cooley's Constitutional Limitations, 5th Ed., 241, 242, and Note 1; Dillon Municipal Corporations, Secs. 367 and 368, Note 1; Bishop Statutory Crimes, Sec. 23; Wharton Criminal Pleading and Practice, Sec. 410; Hughes vs. People, 8 Colorado, 536; State vs. Lee, 29 Minn. 453 (13 N. W. Rep. 913) ; Waldo vs. Wallace, 12 Ind. 569; State vs. City of Topeka, 36 Kansas, 76 (12 Pacific Rep. 310) ; Greenwood vs. State, 6 Baxt. 567; Howe vs. Treasurer, 37 N. J. Law, 145; Mayor, etc. vs. Allaire, 14 Ala. 400; Hamilton vs. State, 3 Texas App. 643; Shafer vs. Mumma, 17 Ind. 331; State vs. Ely, 4 Orr. 277; Johnson vs. State, 59 Miss. 543; Wragg vs. Penn Tp., 94 Ill. 11; McLaughlin vs. Stephens, 2 Cranch C. C. 148; City vs. Cafferata, 24 Mo. 96; Rogers vs. Jones, 1 Wend. 238; Cross vs. North Carolina, 132 U. S. 131 (10 Sup. Ct. Rep. 47)."

To these may be added, Am. and Eng. Encyclopedia of Law, Vol. 17, p. 252, and People vs. Detroit White Lead Works, 82 Mich. 471 (46 N. W. Rep. 735) ; State ex rel. Geale vs. Recorder, 30 La. An. 454.

When we come to an examination of the second branch of the question we have just alluded to, we find that Ordinance No. 6596 of the Common Council does not attempt to determine how or before what tribunals persons charged with its violation shall be tried. It simply declares that said fine or imprisonment is to be enforced by any court of competent jurisdiction within the corporate limits of the city of New Orleans.

If this case was lodged in the Recorder's Court it was not by virtue of any authority to that effect given in the ordinance itself, but under the authority of Sec. 49 of the city charter (Act No. 20 of 1882), a State law.

Under that section recorders have the jurisdiction of committing magistrates and to enforce all city ordinances, and to try, sentence and punish all persons who violate any legal and valid ordinance, and in Sec. 50 all fines, penalties and forfeitures imposed by said recorders are to be collected by them and paid to the city treasurer.

The power or right of the Legislature to confer such authority is expressly provided for, as was said in Mayor vs. Meuer, 35 An. 1193, by Arts. 92 and 136 of the present Constitution.

In that case the court said: "The distinction between crimes against the State and mere violations of municipal ordinances, and the bearing of the constitutional provisions referred to touching the respective modes or methods for the prosecution and punishment of offences against the same, is clearly recognized by elementary writers on the subject and confirmed by frequent adjudications," and in support of that statement cited numerous authorities.

The matter had been fully examined before that case in State, vs. Gutierrez, 15 An. 193, and State vs. Noble, 20 An. 326.

In the case of McInerny already cited, this particular question was investigated, and the court announced its views as follows:

"Whatever may be the view concerning the gravity of the offence against a State law, the very fact that the Legislature authorizes the city to deal with the same subject by ordinance indicates that to the legislative mind the act also properly constitutes one of those petty offences regarded as local injuries. The public welfare requiring the maintenance of peace and good order as well as of careful sanitary regulations in cities and towns renders summary proceedings in many cases a necessity, and we are not now prepared to inaugurate the revolution that must follow the announcement of the doctrine that a jury trial is an indispensable prerequisite. It is hardly necessary to say that such a trial is not always essential to 'due process of law.' * * * An ordinance is not in the constitutional sense a public law. It is a mere local rule, or by-law, a police or domestic regulation, devoid in many respects of the characteristics of public or general laws. The inquiry, therefore, is not was the act complained of a public misdemeanor by statute, or at the common law, but does the offence charged belong to a class of offences that were usually proceeded against summarily. A careful examination of authorities has led us to the conclusion that both in this country and in England the transgression of municipal regulations enacted under the police power for the purpose of preserving the health, peace and good order, and otherwise promoting the general welfare within cities and towns, had for more than a century prior to the adoption of our Constitution been generally prosecuted without a jury." See cases already cited; Sedgwick St. and Const. Law, pp.

496-497; also notes on pp. 487 and 491; Pom. Const. Law, Sec. 246; Proffat Jury, Sec. 95; Ex Parte Hollwedell, 79 Mo. 400; State vs. Conlin, 27 Vt. 318; Byers vs. Com., 42 Pa. Stat. 89; State vs. Glenn, 54 Md. 572: Ex Parte Kiburg, 10 Mo. App. 447; People vs. Mc-Carty, 45 Howard Pr. 97; McGear vs. Woodruff, 33 N. J. Law, 215; Inwood vs. State, 42 Ohio Stat. 186; Hill vs. Major, 72 Ga. 319; Ward vs. Farwell, 97 Ill. 593.

Defendant in general terms attacks the city ordinance as being unconstitutional, illegal and violative of the laws of the State, particularly of Act No. 82 of 1882. He should have pleaded and shown with particularity in what respect it was unconstitutional and illegal. We gather from his brief that the specific objection made is that the State having, as he declares, adopted a standard of adulteration, it was the duty of the municipality to have made its own standard identical with that of the State, and that the two standards not being identical, that of the city by reason of that fact is illegal.

We have already said that the offence charged against the defendant is a separate and distinct offence from that which would have been charged under the State law. The standard which defendant relies upon, is by the very terms of the law, adopted exclusively for the class of cases falling under it and as descriptive of a State offence.

When the General Assembly conferred upon the city of New Orleans the general powers it did over the subject of the health of that city and its maintenance, there was no State law on that subject and the Legislature contemplated that the council should adopt some standard.

It was not only the right but the duty of the council to adopt a standard. The dealers in milk had the right to have a well defined rule of action by which to be governed and to which they could conform. It would be a grievance of which they would unquestionably complain if each case had to be submitted to the recorders and determined by them according to their own ideas as to whether an article sold is or is not adulterated, and is or is not hurtful or prejudicial to the public health, making the recorder's judgment, and not the council's judgment, a standard of right and wrong.

It is not shown that the ordinances are unreasonable or arbitrary, nor (as a standard of some kind had to be adopted) that it passes

beyond a fair measure of correction for the evil against which it seeks to guard.

For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the judgment appealed from be and the same is hereby affirmed.

Rehearing refused.