ROBERT BALLENTINE ET AL. V. RAYMOND S. WEBB.

*Nuisance—Maintenance of slaughter-house—Injunction.*

The bill in this case was filed to enjoin *perpetually* the use of certain premises near the outskirts of the city of Detroit for slaughter-house purposes. The neighborhood was a new one, as a residence part of the city, and a cattle-yard and slaughter-house had been in operation for some years in the near vicinity when defendant established his business. In granting relief in a modified form, the Court state the following propositions:

*a*—The defendant's business is not of such a character as, when properly conducted, to constitute a nuisance in the neighborhood where it is situated.

*b*—The noise made by hogs kept in confinement for the purpose of slaughter, being to some extent unavoidable, does not constitute such a nuisance as would justify a court of equity in destroying defendant's business for the sole purpose of ridding a neighborhood of such noise.

*c*—Complainants are not entitled to a decree which would interfere with defendant's business on the ground that its existence in the neighborhood depreciates the value of their property; they having a complete remedy at law for that injury.

*d*—The decree below is defective in failing to specify *what* defendant is required to do in order to comply with its requirements. To adjudge 'that he is so to conduct his business as not to be offensive is to give him no rule of conduct which the law had not before prescribed. The decree should have specifically pointed out the things that he is required to do, and to refrain from doing, in order to abate the nuisance which the court found to exist.

*e*—Defendant's business, established under the circumstances of this case, and conducted by him on his own premises, will not be enjoined because it cannot be carried on without some degree of offense and annoyance to those living near it. It is only when it reaches the point of discomfort where it becomes *injurious to health* that the injury can be said to be irreparable so as to call forth the extraordinary power. of a court of chancery to destroy it; distinguishing this case from *People v. Lead Works*, 82 Mich. 471.

*f*—Most of the complainants having moved into this neighbor-

hood since the defendant's business was established, although entitled to be protected from nuisances that endanger the health of themselves or families, yet a court of equity, in determining whether it will destroy defendant's business at their request, will consider whether the thing complained of is *noxious* or only *disagreeable*, and the further fact that complainants have voluntarily put themselves into the disagreeable neighborhood; this rule being recognized by How. Stat. § 1643.

*g*—Under the general prayer for relief, complainants are entitled to a decree requiring defendant to remove from his premises daily all manure, blood, offal, hair, and other refuse of his establishment in covered garbage wagons, such as are in use in the city of Detroit, or in other wagons that will effectively avoid the spread of offensive odors; to thoroughly cleanse and disinfect his premises daily; to provide sufficient pens for the hogs in store, so that they shall not be crowded and rendered noisy and quarrelsome by discomfort while in confinement; and to use such other precautions as are necessary to render his place of business clean and wholesome.

Appeal from Wayne. (Hosmer, J.) Argued October 16, 1890. Decided December 24, 1890.

Bill to enjoin defendant from using certain premises for slaughter-house purposes. Complainants and defendant appeal. Decree modified and affirmed. The facts are stated in the opinion.

*Parker & Burton,* for complainants, contended:

1. When a complainant has shown that he lives in the neighborhood of a slaughter-house, he has made out a *prima facie* case, which, if not rebutted, entitles him to relief; citing *Com. v. Perry,* 139 Mass. 199; *Reichert v. Geers,* 98 Ind. 73; *Pruner v. Pendleton,* 75 Va. 516; *Catlin v. Valentine,* 9 Paige, 575.

*Conely, Maybury & Lucking,* for defendant, contended:

1. The remedy by injunction must be confined to that specific thing which constitutes the actual nuisance, as shown by the proofs; citing *Welch v. Stowell,* 2 Doug. 332; *Wreford v. People,* 14 Mich. 41; *Babcock v. Stock Yard Co.,* 20 N. J. Eq. 296.

2. Courts will rarely interfere by injunction where the nuisance may be stopped by indictment; citing *Railroad Co. v. Prudden,* 20 N. J. Eq. 536; and this is a case peculiarly appropriate for trial by jury; citing *Ronayne v. Loranger,* 66 Mich. 373.

3. A lawful business, carried- on in a suitable place, though to the annoyance of the neighbors, will not be enjoined; citing *Doellner v. Tynan*, 38 How. Pr. 182; *Gilbert v. Showerman*, 23 Mich. 448.

CAHILL, J. The complainants are the owners of, and occupy as residence property, lands in the northern part of the city of Detroit, lying between Trumbull avenue and Twelfth street, and between Merrick avenue and Kirby street. The neighborhood is a new one, as a residence part of the city, the complainants having for the most part moved there within a year prior to the filing of their bill in 1887.

In the spring of 1886, the defendant had erected a slaughter-house on the south-east corner of Twelfth and Kirby streets, the cost of which was something over $4,000. Before doing so, he testified that he had acquired permission from the common council. In the near neighborhood were King's cattle-yards and Wreford's slaughter-house, both of which had been in operation some years. Defendant was engaged principally in slaughtering hogs. The hogs were received by rail, and were unloaded from a side track near the slaughter-house to the number of about 300 a week. They were usually kept in the yard at least overnight, and sometimes 24 hours, to cool off before killing. Sometimes car-loads of hogs intended for King's stock-yards, as well as for the defendant, would stand upon the track for several hours at a time, and would make considerable noise by squealing.

Complainants allege in their bill that the swine confined in defendant's yards produce a large amount of manure and filth, and give off an offensive, sickening, and unwholesome stench, and that at times it becomes so unendurable that the inhabitants, of whom complainants form a part, are compelled to leave their homes; that the confined swine make a great disturbance and noise

by squealing so loudly as to awaken persons from sleep, and so constantly as to disturb inhabitants at all times, both day and night. It is alleged that, in consequence of the business carried on by defendant, the land in the vicinity has become depreciated in value; and complainants charge that the stench arising from said swine, and from the drying hair taken from the slaughtered hogs, and from the said slaughter-house, constitutes a nuisance, and that the noise and disturbance made by said swine in confinement constitutes a nuisance; that such nuisances are greatly injurious to the health, comfort, and property interests of the complainants; that the injury to the complainants' health and comfort cannot be measured by monetary value; that the injury to their property interests is upwards of $5,000; and that for such injury to their health, comfort, and property, they are without any adequate relief except in equity.

The prayer of the bill is for preliminary and perpetual injunction to restrain defendant from further using or employing his property for a slaughter-house, wherein to slaughter swine, or any other animals, and from employing the same for the purpose of confining therein quantities of swine or other animals for the purpose of slaughtering them, and for using the same or any part of it as a drying-yard for drying hair or bristles taken from the slaughtered swine; also for general relief.

Defendant answered, admitting that he owned and operated the slaughter-house at the place stated in the bill, and for purposes substantially as charged, but denied that the place was uncleanly, or gave out noisome or unwholesome smells, or that the same was a nuisance in any way. Says that the slaughter-house had been erected, and was carried on, after the newest and most approved methods, and was kept as clean as is possible for such a place to be kept; that it had been constructed expressly

for the purpose for which he was using it, and that if he should be prevented from making such use of it the value of the property, amounting to about $5,000, would be almost wholly destroyed; that, when defendant bought and built there, there were very few buildings in the neighborhood; and that, as yet, the neighborhood was sparsely settled.

The case was heard before Hon. George S. Hosmer, circuit judge, a large number of witnesses being examined on each side, and, the testimony being very conflicting. Upon the part of the complainants, the testimony tended to show that the people living in the vicinity of the defendant's slaughter-house were annoyed, especially during the summer months, by offensive smells coming from the direction of the defendant's place; that these smells were in some instances so offensive as to make the parties sick. It also appeared that people were kept awake at night by the squealing of hogs confined in defendant's yard. It does not clearly appear from the complainants' proof, however, whether the offensive smells of which they complain were such as were necessarily connected with a slaughter-house for the slaughtering of hogs maintained in a proper manner, or whether such smells were due to the improper conduct of the business, and in consequence of defendant's neglect to keep the place in as clean a condition as the same could be kept with proper care. There was evidence tending to show that defendant was in the habit of spreading the hair scraped from the slaughtered hogs upon the ground to dry before sending the same to market, and some of the witnesses thought that much of the unwholesome smell came from this hair.

On the part of the defendant, the testimony tended to show that great care was used by defendant to keep the place clean and wholesome; that the manure and other

offal was removed every day by wagons to a distance in the country; that much of the noise with which complainants found fault came from the squealing of hogs standing in cars on the track intended for King's stock-yards. A considerable number of witnesses called by the defense, who lived in the neighborhood where defendant's business was carried on, testified that they had never noticed any offensive smells, and were never disturbed by the squealing of hogs.

The court below found as a fact that in the prosecution of the business conducted by the defendant he has, at various times, been guilty of maintaining a nuisance in the noxious and offensive odors from the confined swine, and from swine in the process of being slaughtered, and has also been guilty of maintaining a nuisance in the offensive odors from the drying hair and bristles taken from the slaughtered swine, and that at times, depending on the state of the weather or the direction of the wind, such nuisances have been unbearable. The decree, however, did not order the defendant to cease using the place as a slaughter-house altogether, but decreed that defendant refrain from using or employing the buildings and sheds erected on defendant's premises for the purpose of a slaughter-house wherein to slaughter hogs *in such a way as to be offensive to, or become a nuisance to, the complainants;* and that defendant desist and refrain from using or employing the said inclosure or buildings for the purpose of confining therein quantities of swine or other animals *in such a way as to be offensive to, or to be a nuisance to, the complainants, or any of them;* and that defendant desist and refrain from using said inclosure, or any part thereof, as a drying-yard in which to dry hair or bristles taken from the slaughtered swine.

The complainants were given leave to apply to the court for a further order enjoining or restraining defend-

ant from using his premises in any wise for the purpose of slaughtering or confining swine, if it shall appear that the further use of said buildings and inclosure by said defendant be offensive or noxious to the complainants, or any of them, because of the noises arising from the swine, or because of disagreeable odors arising from the inclosure caused by confining swine therein.

From this decree, complainants and defendant have appealed.

On the part of the complainants, it is insisted that the decree falls short of giving them the relief to which they are entitled, because, having adjudged the defendant's business to be a nuisance, such judgment was not followed by an injunction perpetually restraining defendant from further carrying on such business. On the part of defendant, it is claimed that the complainants were not entitled to any relief under their bill and the proofs made, for the reasons:

1. That it does not appear from the bill that the defendant is maintaining such a business as is a nuisance *per se;* that it does not appear from the bill but that the offensive odors arise from causes which can be remedied without any serious interference with the conduct of defendant's business; that there is no allegation in the bill, and substantially no proof, that defendant's slaughterhouse is of itself a nuisance.

2. It is claimed that the decree gave no relief to complainants, and that, upon facts found by the circuit judge, the bill ought to have been dismissed.

Without attempting to review the voluminous testimony in this record, we have arrived at the following conclusions:

1. That defendant's business is not of such a character as, when properly conducted, to constitute a nuisance in the neighborhood where it is situated. This is practically conceded by complainants; and, if it were not, we should

not be willing to hold, as a matter of law, that a business so necessary and important as that in which defendant is engaged, and which his own profit and the convenience of the city require should be conducted within reasonable distance of the market which he supplies, was of necessity a nuisance, independent of the manner in which it was conducted.

2. The noise made by the hogs kept in confinement for the purpose of slaughter, being to some extent unavoidable, does not constitute such a nuisance as would justify a court of equity in destroying defendant's business. for the sole purpose of ridding a neighborhood of such noise. We do not intend by this to intimate that we regard the squealing of pigs as a soothing sound. We have no doubt that such noises are more or less annoying to some people, depending somewhat upon their peculiar temperament. Some of complainants' witnesses testified that they did not notice the squealing of the pigs, which annoyed other members of the family. But in this age of steam and iron, the squealing of a pig is scarcely to be heard amid the multitude of greater noises that everywhere assault the ear. Within a short distance of defend_ ant's place, and nearer to some of complainants than the slaughter-house, are the railroad tracks, over which run the engines with their shrieking whistles, louder than the squealing of a thousand hogs in chorus, and their automatic bells, rung at all times of the day and night, and yet none of the complainants would think of removing the railroad from their neighborhood because of the distressing noises which arise therefrom.

3. Complainants are not entitled to a decree which would interfere with defendant's business on the ground that the existence of it in that neighborhood depreciates the value of their property. As to such injury, if any, complainants have an adequate remedy at law. Wood,

Nuis. (2d ed.) 946; *Attorney General v. Nichol*, 16 Ves. 342; *Zabriskie v. Railroad Co.*, 13 N. J. Eq. 314; 2 Story, Eq. Jur. § 925.

4. We are satisfied that defendant has not, at all times, conducted his business with as much care to cleanliness as he ought. His counsel urged that the testimony fails to locate any offense arising from the slaughter-house proper. If this be granted, we fail to see the force of it. Complainants are not required to discriminate nicely as to the origin of offensive smells. The evidence is convincing that they come from defendant's place of business, and his business must be regarded as including all that is incident to it. The defendant insists that this business can be carried on so as not to be injurious to the health, or seriously offensive, to complainants. The decree of the circuit court recognized this possibility, and undertook to give defendant time and opportunity to abate the nuisance complained of without requiring him to stop his business altogether. The trouble with the decree is that it fails to point out specifically what defendant is required to do in order to comply with its requirements. To adjudge that defendant should so conduct his business as not to be offensive is to give him no rule of conduct which the law had not before prescribed. The decree should have specifically pointed out the things that defendant was required to do, and to refrain from doing, in order to abate the nuisance which the court found to exist.

5. Defendant's business, established under the circumstances of this case, and conducted by him on his own premises, will not be enjoined because it cannot be carried on without some degree of offense and annoyance to those living near it. It is only when it reaches the point of discomfort where it becomes injurious to health that the injury can be said to be irreparable so as to call

forth the extraordinary power of a court of chancery to destroy it. So careful is the law of human life and health that no consideration of mere property rights can be allowed to weigh against them. As to other wrongs, they can, for the most part, be compensated in damages. In the recent case of *People v. Lead Works*, 82 Mich. 477, the rule in a case at law was stated by Mr. Justice GRANT as follow:

"The defendants cannot be protected in the enjoyment of their property, and the carrying on of their business, if it becomes a nuisance to people living upon the adjoining properties, and to those doing legitimate business with them. Whenever such a business becomes a nuisance, it must give way to the rights of the public, and the owner thereof must either devise some means to avoid the nuisance, or must remove or cease the business. It may not be continued to the injury of the health of those living in its vicinity. This rule is founded both upon reason and authority. Nor is it of any consequence that the business is useful or necessary, or that it contributes to the wealth and prosperity of the community. Wood, Nuis. § 19; *Queen v. Train*, 2 Best & S. 640; *Works v. Railroad Co.*, 5 McLean, 425; *Respublica v. Caldwell*, 1 Dall. 150; *Ross v. Butler*, 19 N. J. Eq. 296; *Robinson v. Baugh*, 31 Mich. 290.

"It is true that, in places of population and business, not everything that causes discomfort, inconvenience, and annoyance, or which, perhaps, may lessen the value of surrounding property, will be condemned and abated as a nuisance. It is often difficult to determine the boundary line in many such cases. The carrying on of many legitimate businesses is often productive of more or less annoyance, discomfort, and inconvenience, and may injure surrounding property for certain purposes, and still constitute no invasion of the rights of the people living in the vicinity. Such a case was *Gilbert v. Showerman*, 23 Mich. 448."

In *Cleveland v. Gas Light Co.*, 20 N. J. Eq. 205, the rule was stated more broadly:

"Any business, however lawful, which causes annoyances that materially interfere with the ordinary comfort

physically of human existence, is a nuisance that should be restrained; and smoke, noise, and bad odors, even when not injurious to health, may render a dwelling so uncomfortable as to drive from it any one not compelled by poverty to remain. Unpleasant odors, from the very constitution of our nature, render us uncomfortable, and when continued or repeated make life uncomfortable. * * * The only question is, what amounts to that discomfort from which the law will protect? The discomforts must be physical, not such as depend upon taste or imagination."

This language was used in a case where the court was asked to restrain the defendants from erecting or carrying on their gas-works at the place at which they had begun to erect them or in the neighborhood of that place, and although the court declined to grant the injunction on the ground that it did not clearly appear that the works, ‹‘when completed, would be a nuisance," the foregoing rule was clearly stated as one that would govern the court in dealing with the company should complaint afterwards be made. The facts in that case were that defendants proposed to erect their gas-works in a populous residence portion of the city of Newark, and such a case is to be distinguished from this, where defendant erected his place of business at the outskirts of the city, and in a locality where similar kinds of business were already established. Most of the complainants had moved into this neighborhood since the defendant's business was established; and, although they have a right to be protected from nuisances that endanger the health of themselves or their families, a court of equity, in determining whether it will destroy defendant's business at their request, will consider whether the thing complained of is noxious or only disagreeable, and in the same connection will consider the fact that complainants have voluntarily put themselves into the disagreeable neighborhood. The rule here contended for is recognized by our

statute concerning the abatement of nuisances. How. Stat: § 1643.

Under the general prayer for relief, complainants are entitled to a decree requiring defendant to remove from his premises every day all manure, blood, offal, hair, and other refuse of his establishment in covered garbage wagons, such as are in use by the board of public works in the city of Detroit, or in other wagons that will effectively avoid the spread of offensive odors; to thoroughly clean, cleanse, and disinfect his premises daily; to provide sufficient pens for the hogs in store, so that they shall not be crowded and rendered noisy and quarrelsome by discomfort while in confinement; and to use such other precautions as are necessary to render his place of business clean and wholesome.

No costs will be awarded to either party in this Court. The decree below as to costs is affirmed.

CHAMPLIN, C. J., and LONG, J., concurred. MORSE and GRANT, JJ., did not sit.