## LONE STAR SALT COMPANY v. F. R. BLOUNT ET AL.

### Decided February 5, 1908.

#### 1.—Anti-Trust Law—Injunction—Equity—"Clean Hands."

In a suit by injunction to restrain the officers of a corporation from violating the anti-trust laws of the State, an answer of the defendant, in effect, that the plaintiffs were formerly managing officers of the corporation and while such officers made the same character of contracts and engaged in the

same practices as those which they now seek to enjoin, and that the suit was instituted for ulterior purposes, was properly stricken out on exception. The maxim "He who comes into equity must come with clean hands," had no application. The iniquity which will bar a complaint must be directly connected with the matter in litigation.

**2.—Injunction—Decree—Particularity.**

The decree of a court granting an injunction should specify with certainty the particular acts to be done or not to be done, in order that the party enjoined will have a definite guide by which to shape his conduct, and should within itself apprise the defendant what he is restrained from doing without the necessity of consulting the bill. Decree considered, and held defective in this respect.

**3.—Auditor—Duties—Report.**

The duty of an auditor is to so make up an account that the disputed items upon either side may be eliminated from the contest and the issue thereby narrowed to the points in dispute. Items in his report not excepted to, are conclusive, but as to such as are excepted to, the report is without effect. Report of an auditor considered, and held to contain his conclusions and other matters upon which he was not authorized to pass.

**4.—Taxing Cost—Practice.**

An appellate court will not consider a question as to the taxing of costs when the record shows that the question was not raised or passed upon in the trial court.

Appeal from the District Court of Van Zandt County. Tried below before Hon. R. W. Simpson.

*J. A. Germany* and *Coke, Miller & Coke,* for appellant.

*J. M. McCormick,* for appellees.—The injunction in this case is sufficiently definite to meet the requirements of equity jurisprudence. It is not a vice in the decree that the injunction forbids the doing of acts forbidden by penal laws. Northern Securities Company v. United States, 193 U. S., 355 (decree set out), 356 (decree approved).

RAINEY, CHIEF JUSTICE.—On November 2, 1904, F. R. Blount and D. C. Earnest brought this suit against the Lone Star Salt Company, a corporation incorporated under the laws of Texas, to restrain it from violating the anti-trust laws of Texas, to require it to keep its corporate records within the State, and to declare a dividend upon its capital stock.

Plaintiffs' petition, in substance, alleged that about 1897 Jay Morton and certain of his associates, all nonresidents of Texas, formed a conspiracy in restraint of trade, and a combination to regulate the price of salt, and in furtherance of said scheme they organized the National Salt Company, a foreign corporation, for manufacturing and selling salt, which said company secured the control of the stock of a great number of corporations manufacturing and selling salt outside of Texas, and of the defendant, and did by said means about January 1, 1901, control and dominate the salt trade of the United States, and divided up the territory of the United States among its subsidiary companies and fixed the prices of salt and proceeded to crush out competition. That since

1900 said Joy Morton and associates have controlled and dominated, acting through the National Salt Company, the affairs of the ·Lone Star Salt Company, in the interest of said conspiracy and combination in the restraint of trade. That through the mismanagement of Joy Morton, the president, and Frank Vincent, vice-president, of defendant, with the consent and connivance of the board of directors of defendant in many ways, specifying the different acts of mismanagement, they have diverted the funds of defendant and have declared no dividends for the years 1902, 1903 and 1904. That the National Salt Company has gone out of business, but has been succeeded by the International Salt Company, incorporated under the laws of New Jersey, which is controlled by Joy Morton and associates, who also dominate the defendant. "That it is the policy, as plaintiffs are informed and believe and charge, of the said International Salt Company and of said Joy Morton and his associates in controlling and monopolizing the salt business of the country, and notably its products in Texas, to acquire by purchase and contract the total output of such salt producing plants as are not owned and controlled directly by said Morton and his associates and said International Salt Company, and to that end the said Morton and his associates, and said International Salt Company have acquired by contract the output of many factories in Michigan, Kansas, Ohio, Texas and other salt producing States, and by that means are relieved of the necessity and expense of purchasing outright the plants producing such contract salt." That by reason of the facts aforesaid defendant has been compelled, and will be compelled, by Joy Morton and associates to violate the anti-trust laws of Texas, which violation will subject it to a. penalty of $50 per day, and a forfeiture of its charter, etc., and prays that defendant be enjoined from continuing as a party to such combination, etc. Plaintiffs sue for themselves and for other stockholders who wish to join.

The defendant answered by general demurrer and general denial, and specially, among other things, in effect, that plaintiff, F. R. Blount, was president of defendant until 1902 and a director of defendant, and that said D. C. Earnest was a director and general manager until June, 1902, and up to said time they controlled and managed the business of the defendant, and if it was connected with any trust, plaintiffs well knew the facts and were actively concerned, engaged and connected therewith. Defendant then sets out various acts of Blount and Earnest during their management and numerous acts since in the bringing of various vexatious and harassing suits and numerous other acts which it says will prevent the plaintiffs from recovering the relief prayed for. This special answer was excepted to and the exception sustained. An auditor was appointed, to the report of which defendants excepted, but said exception was overruled.

Upon a trial special issues were submitted to the jury, and upon the return of their answer a judgment was entered -permanently restraining defendant as prayed for, but no dividends were ordered paid. Defendant appeals.

Appellant complains of the action of the court in sustaining the defendant's exceptions to paragraph 16 of its answer, which embraces about 23 pages of legal cap, setting forth the various acts of the plaintiffs committed while they were in control of and managing the operations of defendant and bringing the various suits against defendant after they had ceased to control and manage the operations of defendant. The contention is that plaintiffs had not come into court with clean hands and they were not in good faith proceeding for the protection of their six shares of stock, but for the purpose of coercing defendant into doing their will with reference to other and distinct matters. The maxim that "He who comes into equity must come with clean hands" is well recognized and in proper cases will be enforced. But it is "a qualifying principle, as well settled as the maxim itself, that the iniquity which will bar a complaint must be directly connected with the matter in litigation." 11 Am. & Eng. Ency. Law, p. 164. Recognizing this qualification, were the iniquities complained of so connected with this action as to apply the equitable maxim, "He who comes into equity must come with clean hands?" We think not. The plaintiffs are seeking in this action to restrain the alleged conduct of defendant, which, if true, would be a violation of the anti-trust laws of this State and work a forfeiture of its charter and subject it to a penalty. The prevention of said conduct is of vital interest to all stockholders, and under the statute they have the right to invoke the aid of the courts in obtaining relief. The contracts of plaintiffs, if made while they were in control and managing the business of defendant, and if in violation of the statute, expired before the institution of this suit, and they have the right, being stockholders, to have defendant conduct its affairs in a legal manner. There was no error in sustaining the exception complained of.

Complaint is made of sections 2 and 3 of the judgment granting an injunction, "because it fails to define with such particularity as is requisite to the validity of an injunction the acts and things that this defendant is prohibited from doing." Clauses 2 and 3 of said judgment read as follows: "2. It is further considered by the court, ordered, adjudged and decreed by the court, that the defendant, Lone Star Salt Company, a corporation, be and is hereby commanded and perpetually enjoined to desist from engaging in or continuing to be engaged in any combination of capital or acts with any person, firm or corporation or association of persons, for the purpose to create or which may tend to create or carry out restrictions in the free pursuit of its business of manufacturing and selling salt anywhere, or for the purpose to fix or maintain any standard or figure whereby the price of salt shall be in any manner affected, controlled or established; or for the purpose to make, enter into or maintain, execute or carry out any contract, obligation or agreement by which the parties thereto bind or have bound themselves not to sell, dispose of, transport or prepare for market any salt, or by which they shall agree in any manner to keep the price of salt at a fixed or graded figure; or by which they shall in any manner affect or maintain the price of salt so as to preclude a free and un-

restricted competition among themselves or others in the sale of salt, or the preparation thereof for market, or by which they shall agree to combine, pool or unite any interests they may have in connection with the sale or purchase of salt, whereby the price might be in any manner affected; or for the purpose to regulate, fix or limit the output of salt which may be manufactured, mined, produced or sold."

"3. It is further considered by the court, ordered, adjudged and decreed that the defendant, Lone Star Salt Company, a corporation, be and hereby is commanded and perpetually enjoined to desist from engaging in or continuing a combination with any other corporation affected by bringing the direction of its affairs and the affairs of such other corporations under the same management or control for the purpose of producing, or where such common management or control tends to create a trust as defined by the laws of the State of Texas."

These paragraphs of the judgment, in a general way, enjoin the defendant from any act that would restrict it in the free pursuit of its business in the manufacture or sale of salt anywhere, or for the purpose to fix or maintain any standard or figure whereby the price of salt be in any manner affected, controlled or established, etc. The business of defendant was the manufacture and sale of salt and the effect of said order was generally to prohibit the violation of the anti-trust laws of this State, without specifying what acts would constitute such violation.

The petition set out in what respects the defendant was violating said law, naming the parties with which defendant was engaged in violating the laws and with whom the conspiracy was formed to carry the unlawful purposes into effect, but the decree does not name the parties with whom it was connected or what particular combination or conspiracy the defendant must abstain from engaging in or carrying out. It leaves the defendant to determine at its own risk what course to pursue. The decree of the court should specify with certainty the particular acts to be done in order that the party enjoined will have a definite guide by which to shape his conduct. "An injunction should contain within itself sufficient . . . to apprise the party upon whom it is served what he is restrained from doing, without the necessity of his resorting to the bill on file." 2 Spelling on Injunctions, sec. 1123 (2d ed.); Ballentine v. Webb, 84 Mich., 38.

In the last named case an action was brought to restrain defendant from maintaining a nuisance, that is, a slaughter house for swine. "The trial court decreed that defendant refrain from using or employing the building and sheds erected on defendant's premises for the purpose of a slaughter house wherein to slaughter hogs in such a way as to be offensive to, or become a nuisance to, the complainant, and that defendant desist and refrain from using or employing the said enclosure or building for the purpose of confining therein quantities of swine or other animals in such a way as to be offensive to, or to be a nuisance to, the complainants, or any of them; and that defendant desist and refrain from using said enclosure, or any part

thereof, as a drying yard in which to dry hair or bristles taken from the slaughtered swine." In passing upon this decree the Supreme Court of that State said: "The trouble with the decree is that it fails to point out specifically what defendant is required to do in order to comply with its requirements. To adjudge that defendant should so conduct his business as not to be offensive, is to give him no rule of conduct which the law had not before prescribed. The decree should have specifically pointed out the things that defendant was required to do and to refrain from doing, in order to abate the nuisance which the court found to exist."

We are of the opinion that the principle announced as to the certainty required is applicable to the decree in this case, and in that respect said decree is defective.

The court appointed an auditor over the protest of appellant, who reported, among other things, as follows:

"I find from all the facts and circumstances that A. G. Warren & Company and J. F. Ewing neither had any practical existence in fact, and that the purchase of all of said salt was in fact made by defendant company from what was known as the 'Richardson' or 'Lower Salt Works,' and the Fielder Salt Works of Grand Saline, which were the competitors of the defendant in salt industry, and that the 'make believe' purchase of said salt from A. G. Warren & Company and J. F. Ewing was a mere device and subterfuge to conceal the fact that defendant company was controlling the entire output of the Grand Saline salt field."

"I find that the price at which defendant company was obtaining said salt presumptively from A. G. Warren & Company and J. F. Ewing was at no material advance over the cost of production, but that these two straw firms, while paying the producing plants from which they were apparently buying but little above actual cost, were charging defendant a small profit over the cost to them, and that defendant company was loading, packing and selling the product, and the said A. G. Warren & Company and J. F. Ewing were at no expense whatever in the transaction. I further find that the profit which they realized in their assumed transactions with the defendant company went into the coffers of the said National Salt Company, and it was a means by which the company used to procure a profit on the operations and business of said defendant company without having to declare it in the shape of a dividend."

"I find that the capacity of the defendant company's plant at Grand Saline was fully equal to the manufacture of all the salt sold by it during the entire period, that is, that no necessity existed to buy the salt of its competing plants at Grand Saline."

"Explanatory of the third division of this report, I find that what is meant in the books of the company and its records as the 'Chicago office' is the office of Mr. Joy Morton, at Chicago, who is the president of defendant company, and the controlling factor in the National Salt Company."

These portions of the auditor's report were excepted to by the appellant, which exceptions were overruled by the court. We are of the opinion that this ruling was error. "The purpose for the ap-

pointing of an auditor is to have an account so made up that the undisputed items upon either side may be eliminated from the contest and the issue thereby narrowed to the points in dispute." "The items of an account in an auditor's report not excepted to by either party are conclusive, but as to such as are excepted to the report is without effect." Kempner v. Galveston, 76 Texas, 450. This being the purpose of an auditor and the effect of his report, the portion of his report excepted to was without warrant, and his findings were mere conclusions which, upon exceptions, were of no effect and should not have gone to the jury. The ruling of the court gave to such conclusions a weight before the jury, to which they were not entitled, and the effect produced thereby can not be determined, but we must presume it was prejudicial to appellant.

We will not entertain a question as to the taxing of costs by the trial court, which is raised here for the first time. The record fails to show that the question of costs was called to the attention of the trial court. Clark v. Adams, 80 Texas, 675.

The judgment is reversed and cause remanded.

*Reversed and remanded.*