**THOMAS et al. v. INTERNATIONAL SEA-MEN'S UNION OF AMERICA et al.**

**RISAGER et al. v. BAKER et al.**

No. 3142.

Court of Civil Appeals of Texas. Beaumont.
Jan. 11, 1937.

Rehearing Denied Jan. 20, 1937.

Sonfield, Sonfield & Murphy, of Beaumont, and H. G. Dippel and Harry W. Freeman, both of Houston, for appellants.

Fred A. White and J. W. Williams, both of Port Arthur, for appellees.

WALKER, Chief Justice.

We take the following statement of the nature and result of this suit from brief of appellants Arthur Thomas et al. and Eddie Risager et al.:

"On November 16, 1936, Arthur Bendheim and others, acting individually and for and on behalf and in the name of International Seamen's Union of America, brought suit in the District Court of Jefferson County, 58th Judicial District of Texas, said suit being numbered 49096 on the docket of said court, praying that the court 'issue a temporary restraining order temporarily restraining the respondents (Arthur Thomas et al.) and all others associated with them, advising with them and in any manner aiding or encouraging them in their illegal actions from:

"'(a) Unlawfully interfering in any manner with the actions of the plaintiff, its members and Relators, in connection with their employment as seamen and mariners under any existing contract of hire or employment entered into by plaintiff with any ship owners or operator of

a vessel plying between the port of Port Arthur and any other port in the world, or the pursuit of the calling of seamen or mariners engaged in by plaintiffs members upon vessels owned, or operated by any owners or operators who, although such owners or operator has not entered a written contract with plaintiff has nevertheless abided by and fulfilled all of the terms and obligations of existing written contracts made and entered into by plaintiff with other ship owners and operators.

" '(b) Denominating and designating themselves in any other actions henceforth in the future members in good standing and are duly accredited representatives, and are duly qualified to represent in any manner the International Seamen's Union of America, and its affiliated associations as herein named.

" '(c) Denominating, calling or designating any of their actions legal or otherwise as part or parcel of a duly called and existing strike taking place in Jefferson County, Texas, with the sanction, approval and acquiesence of the International Seamen's Union of America.

" '(d) Posting lines of pickets or picket posts in the name of the International Seamen's Union of America, and their affiliated Associations as herein named (or in any other name) at any place, public or private, in Jefferson County, Texas, and especially, at or near the entry of other properties of those owning, operating and chartering ships and vessels at the port of Port Arthur, Texas, and any and all ports and properties or shipping interest located at the various places on the waters of Sabine Pass and tributaries thereto. .

" '(e) Masquerading and illegally holding themselves out as acting by authority of the International Seamen's Union of America, and its affiliated departments as above set forth, by word of mouth written or printed placards, cards, gestures or by any other means whatsoever, directly or indirectly; and further from representing by anyone or all of the above means or methods, that their acts are part and parcel of a lawful called strike now existing in the port of Port Arthur, Texas, or any of the waters of Sabine Pass and those tributary thereto.

" 'That on final hearing hereof that the Respondent and all those associated with them, advising them, or in any manner aiding, abetting, or encouraging them, be enjoined perpetually, as prayed for in subdivisions (a), (b), (c), (d), and (e) above.

" 'That the clerk of this court be ordered to issue all necessary and proper writs as required by law to be served upon the Respondents named herein, citing them to make full answer herein as required by law; and that the Relators have all other and further relief, equitable and legal, general and special, as they may be entitled to receive.'

"The hearing on the above petition was set for the 17th day of November, 1936.

"Subsequent to the filing of the above petition, but on the same day, Eddie Risager and others filed in the same court their petition against H. F. Baker, Chief of Police of the City of Port Arthur, and his subordinate officers, praying for a temporary restraining order restraining said officers from arresting, molesting, harassing and interfering in any manner with relators in their peaceful picketing in the City of Port Arthur, Texas, and at the docks and waterfronts within Jefferson County, Texas, and in the City of Port Arthur, Texas, so long as there was no intimidation and violence and so long as pickets did not congregate in a body of more than three in number. The court granted the temporary restraining order prayed for without hearing and in its fiat required respondents in said cause to appear on the 17th day of November, 1936, to show cause why a temporary writ of injunction should not be granted upon such petition effective until final decree. On the 17th day of November, 1936, both of the aforesaid causes came on for trial, and it was agreed in open court by the attorneys of record for all parties that both of said causes be heard at the same time and consolidated for the purpose of making appropriate orders therein. Said hearing continued from day to day until the 20th day of November, 1936, at which time judgment was rendered by said court."

The following decree was entered by the lower court:

"These causes having come on to be heard on the 20th day of November, 1936, and the parties, plaintiffs, relators and respondents, respectively, having agreed in open court that said causes should be heard at the same time and consolidated

for the purpose of making appropriate orders therein;

"And thereupon came the plaintiff, International Seamens Union of America, by Arthur Bendheim, George L. Talbert, and J. L. Grimes, plaintiff's agents, and the plaintiff also appearing by its attorneys, Fred A. White and J. W. Williams; also came the relators, Arthur Bendheim, George L. Talbert, and J. L. Grimes, in person, also being represented by their attorneys, Fred A. White and J. W. Williams; and also came and appeared the respondents, Arthur Thomas, R. Dean, J. M. Kelly, M. Munti (Muntini), M. Garnier and W. Fawkas, in person and said respondents also being represented by their attorney, George M. Sonfield; and also came the said Eddie Risager and John Keefe, relators, in their individual capacities and as representatives of their class, said parties having appeared in person and by their attorney, George M. Sonfield; and also came the respondent, H. F. Baker, in person and by his attorneys, Fred A. White and J. W. Williams, and the court having heard the pleadings and evidence and having duly considered the same, and being of the opinion that the following relief should be granted;

"It is therefore considered, ordered, adjudged and decreed

"1. That the temporary restraining order entered herein on the 16th day of November, 1936, against H. F. Baker, be, and the same is hereby set aside and dissolved, and in lieu of said former order the said H. F. Baker, Chief of Police of the City of Port Arthur, and his subordinate officers, be, and they are hereby enjoined and restrained from illegally harassing, threatening or coercing the striking members of the International Seamens Union of America with intent to force them to leave the precincts of the city of Port Arthur, or otherwise interfering with their peaceful pursuits or from making illegal arrests without probable cause.

"2. That the respondents named in the suit of International Seamens Union of America et al. v. Arthur Thomas et al., their officers, agents, sympathizers, aiders or abettors, and all persons associated with them, be, and they are hereby enjoined and restrained from in any manner aiding or encouraging said respondents in, and are commanded to desist from

"(a) Unlawfully interfering in any manner, with the actions of plaintiff, its members and relators, in connection with their employment as seamen and mariners under any existing contract of hire or employment entered into by plaintiff with any ship owner or operator of a vessel plying between the port of Port Arthur and any other port of the world, or the pursuit of the calling of seamen or mariners engaged in by plaintiff's members upon vessels owned or operated by any owner or operator who, although such owner or operator, has not entered into a written contract with plaintiff has nevertheless abided by and fulfilled all of the terms and obligations of the existing written contracts made and entered into by plaintiff with other ship owners and operators.

"(b) Denominating and designating themselves in any of their actions henceforth in the future as members in good standing and/or duly accredited representatives, and/or duly qualified to represent in any manner the International Seamens Union of America, and its affiliated associations as herein named.

"(c) Denominating, calling or designating any of their actions legal or otherwise as part or parcel of a duly called existing and legal strike taking place in Jefferson County, Texas, with the sanction, approval and acquiescence of the International Seamens Union of America.

"(d) Posting lines of pickets or picket posts in the name of the International Seamens Union of America, and their affiliated associations as herein named or in any other name, at any place, public or private, in Jefferson County, Texas, and especially at or near the entry of the property of those owning, operating and chartering ships and vessels at the port of Port Arthur, Texas, and any and all ports and properties of shipping interests located at the various places on the waters of Sabine Pass and tributary thereto.

"(e) Masquerading and illegally holding themselves out as acting by authority of the International Seamens Union of America, and its affiliated departments, as set forth in petition of plaintiff and relators, by word of mouth, written or printed placards, cards, gestures or by any other means whatsoever, directly or indirectly; and further from representing

by any one or all of the above means or methods, that their acts are part and parcel of a lawfully called strike now existing in the port of Port Arthur, Texas, or any of the waters of Sabine Pass and those tributary thereto.

"(f) Said respondents and the striking members of the International Seamens Union of America and those aiding, abetting and sympathizing with them, either under the name of International Seamens Union of America or under any other name, from interfering in any manner or by any means with any one desiring to pursue a lawful calling, and from using any method or means of intimidation or coercion, whether by physical violence or otherwise, to induce one to refrain from following any lawful business, whether by the posting of picket lines, picket posts, or the assemblage of groups at points where those seeking employments may be encountered.

"This order shall extend to all parties to these consolidated causes and any and all agencies and groups which they may represent and shall remain in effect in so far as the territorial jurisdiction of this court extends.

"Upon the plaintiff and relators in cause No. 49096 executing in behalf of the respondents in said cause a bond with two or more good and sufficient sureties in the sum of $1,000.00, conditioned as the law requires, to be approved by the clerk, it is ordered that the clerk of this court shall quote this order and embody the same in a writ, directed to the several respondents named herein, commanding, requiring and enjoining them in the observance of this order and decree.

"The costs incurred in cause No. 49098 are assessed against the relators and their bondsmen in that cause; the costs thus far incurred in No. 49096 are assessed against the plaintiff and relators in that cause.

"To this decree the relators in cause No. 49098, and the respondents in cause No. 49096 in open court duly excepted, and gave notice of appeal."

On the trial in lower court the facts on all issues were fully developed, and the evidence is before us in statement of facts of 459 pages, exclusive of exhibits. No conclusions of fact and law were filed. The evidence was sufficient to support the following conclusions of fact:

(1) Appellants were members in good standing of International Seamen's Union of America and its affiliated associations. Under contracts between their union and certain shipping companies using the ports of Jefferson county, appellants were employees of these companies. Some weeks before the institution of this litigation, appellants instituted a strike against these shipping companies. (2) International Seamen's Union of America and its affiliated associations, nor any of them, authorized the strike, nor were they in any way in sympathy with the strike, but on the contrary the strike was called and was being conducted contrary to and against the orders of International Seamen's Union of America and its affiliated bodies. (3) In calling and conducting the strike, respondents were in rebellion against their union. (4) In conducting their strike, notwithstanding respondents were in rebellion against their union, they were attempting to picket and conduct the strike in such way as to cause the general public and their fellow members not on strike to believe that they were striking as members of their union. (5) In the conduct of the strike many atrocious and cruel outrages were committed, in some instances amounting to highway robbery and vicious personal assaults, endangering the lives of those assaulted.

We sustain appellees' contention that the order of the lower court was a final and not an interlocutory judgment. The parties made their personal appearance in court. Every issue made by the pleadings was fully developed, both on the law and facts. It appears with reasonable certainty that it was the intention of the court and the parties to this litigation to develop fully on the hearing every issue in controversy. Appellees had not prayed for a temporary injunction; therefore, it would not be reasonable to say that the court granted them a relief not prayed for. Appellants, in their petition against Baker, prayed for a temporary restraining order which was granted ex parte; on hearing appellants prayed for a temporary injunction. The order appealed from dissolved the temporary restraining order and granted the injunction, as reflected in the judgment before us. The very language of the decree imports a final judgment. Appellants insist that because the judgment of the lower court required appellees to execute

a bond it was interlocutory and not final. That conclusion does not necessarily follow, but the judgment should be construed by the conduct of the parties and by the intention of the court rendering the judgment gathered from the language of the decree.

We also overrule appellants' contention that appellees plead no *interest* sufficient to invoke the jurisdiction of the court. The fact that appellants were unlawfully using the name of appellee in conducting their strike was sufficient to support the petition against this assignment.

The language of section (a) of paragraph 2 of the decree, "unlawfully interfering in any manner with the actions of plaintiff," etc., is too general. The law is thus stated by 32 C.J. 368, § 620: "The writ of injunction or restraining order should be so clear and certain in its terms that the defendant may readily know what he is restrained from doing, and that he must obey it at his peril." See, also, subdivision 4 of article 4651, R.C.S.1925; Royalty v. Strange (Tex.Civ.App.) 204 S.W. 870; Lone Star Salt Co. v. Blount, 49 Tex.Civ.App. 138, 107 S.W. 1163; Kleising v. Miller (Tex. Civ.App.) 83 S.W.(2d) 732; New York Ry. Co. v. Interstate Commerce Commission, 200 U.S. 361, 26 S.Ct. 272, 50 L.Ed. 515; Laurie v. Laurie, 9 Paige (N.Y.) 234, at page 235; Ballentine v. Webb, 84 Mich. 38, 47 N.W. 485, 13 L.R.A. 321; 32 C.J. p. 368, § 620. Section (a) of paragraph 2 is modified by striking out the first word, "unlawfully," and by inserting after the words "interfering in any manner" the words "except as hereinafter granted and allowed."

We overrule all exceptions against paragraphs (b) and (c) of the decree. Because appellants were members in good standing of International Seamen's Union of America did not give them the right to use the name of this union in conducting their strike and in appealing for public support and the support of union members. Appellants were in rebellion against their union and, therefore, had no right to use its name in any way in conducting their strike.

Paragraph (d) of the decree, whereby appellants are enjoined from posting picket lines "in any other name," is an undue limitation upon their rights.

As we understand appellees' petition, appellees prayed only that appellants be enjoined from posting picket lines or picket posts in the name of International Seamen's Union of America and its affiliated associations. But even if the relief granted had been prayed for, the lower court should not have prevented peaceful picketing, a right specifically granted appellants by virtue of article 5153, Revised Statutes 1925, reading: "It shall be lawful for any member or members of such trades union or other organization or association, or any other person, to induce or attempt to induce by peaceable and lawful means, any person to accept any particular employment or to enter or refuse to enter any pursuit or quit or relinquish any particular employment or pursuit in which such person may then be engaged. Such member or members shall not have the right to invade or trespass upon the premises of another without the consent of the owner thereof." This article does not use the term "picketing," but the right granted falls within any possible definition of peaceful picketing. Under this statute appellants had the right to post picket lines or picket posts provided, in doing so, they did not use appellees' name. This statute invokes strongly, we might say with compelling force, the opinion of the court in Walter A. Wood Mowing & Reaping Machinery Co. v. Toohey, 114 Misc. 185, 186 N.Y.S. 95:

"The strikers are accused of 'picketing'; in fact, that is the one great grievance set forth in the complaint. But suppose they are picketing; What of that? They have as much right to picket as to strike, providing that they do not resort to threats or violence. Picketing simply means standing along the highways of approach, or near the entrances to the plant, in time of strike, for the purpose of observing who is working and of attempting to persuade them to quit. * * *

"It is the law of this state, so far as the question has been settled, that strikers may employ persuasion and peaceful means to keep non-union men from taking their places; and the fact that the plaintiff is irreparably damaged as an incident of the picketing, and that it has no adequate remedy at law, does not deprive the defendants of the right to picket, providing there is no malice and no violence. This rule, which must, I believe, at last

everywhere prevail, *has just recently been firmly planted in the statutes of the United States. In other words picketing has been legalized by Congress. The right to picket is, therefore, no longer a debatable question in the federal jurisdiction.* * * *

"Thus we find the right to 'picket' definitely sanctioned and rooted in the statute laws of the federal government. This enactment does not, of course, control the courts of the state of New York in a case of this character; but it does put into federal statutory form the law of this state as propounded by its ablest jurists. It also sweeps away completely, from consideration here, all that has been previously written by the federal courts in opposition to picketing, including Atchison, T. & S. F. Ry. Co. v. Gee [C.C.] 139 F. 582, cited by the plaintiff. And not only that, but it sets forth in bold, certain, statutory language, the trend of modern thought against injunctions in labor disputes. * * *

"Judge Andrews, now on the Court of Appeals, sitting then at Special Term, in a well-considered opinion, the best I have read on the subject, correctly sets forth the law of this state on picketing. He said:

" 'Mere picketing, therefore, if it is peaceful, if there is no threat or intimidation, if it is confined to simple persuasion, I do not regard in any sense as unlawful whatever may be the motive of the picketers.' Foster v. Retail Clerks' etc., 39 Misc. 48, 57, 78 N.Y.S. 860, 867.

"This is sound. It is just. It is the law. It must forever remain the law, until liberty of speech ceases to be a human right.

"If, then, it is the law in this state that strikers on picket duty may use 'persuasion,' what is persuasion? What language is permitted? What is prohibited? The nomenclature of the strike is not the language of the parlor. Men become earnest and excited and vigorous at such times. A vital principle is at stake. It is not within the limits of human nature to remain calm and gentle under such circumstances. The fervor of argument is upon them; the stimulus of battle. They forget etiquette and grammar. They employ strong language. Sometimes they go beyond the borders of decorum. But so do men in all walks of life. Instigated by emotion and impelled by deep conviction men always employ strong words. This happens during political campaigns, and on election day, and even in the courtroom while lawyers are addressing the bench. Men gesticulate, on such occasions, and become excited and demonstrative."

In Iron Molders' Union v. Allis-Chalmers Co. (C.C.A.) 166 F. 45, 49, 20 L.R.A.(N.S.) 315, the court said:

"To organize for the purpose of securing improvement in the terms and conditions of labor, and to quit work and to threaten to quit work as means of compelling or attempting to compel employers to accede to their demands for better terms and conditions, are rights of workmen so well and so thoroughly established in the law (Thomas v. Cincinnati, N. O. & T. P. R. Co. [C.C.] 62 F. 803 [4 Inters.Com.Rep. 788]; Arthur v. Oakes, 63 F. [310] 320, 11 C.C.A. 209, 25 L.R.A. 414 [4 Inters.Com.Rep. 744, 24 U.S. App. 239]; Wabash R. Co. v. Hannahan [C.C.] 121 F. 563), that nothing remains except to determine in successive cases as they arise whether the means used in the endeavor to make the strike effective are lawful or unlawful. * * *

"With respect to picketing as well as persuasion, we think the decree went beyond the line. The right to persuade new men to quit or decline employment is of little worth unless the strikers may ascertain who are the men that their late employer has persuaded or is attempting to persuade to accept employment. Under the name of persuasion, duress may be used; but it is duress, not persuasion, that should be restrained and punished. In the guise of picketing, strikers may obstruct and annoy the new men, and by insult and menacing attitude intimidate them as effectually as by physical assault. But from the evidence it can always be determined whether the efforts of the pickets are limited to getting into communication with the new men for the purpose of presenting arguments and appeals to their free judgments. Prohibitions of persuasion and picketing, as such, should not be included in the decree. Karges Furniture Co. v. Amalgamated Woodworkers Local Union No. 131, 165 Ind. 421, 75 N.E. 877, 2 L.R.A.(N.S.) 788 [6 Ann.Cas. 829]; Everett Waddey Co. v. Richmond Typographical Union No. 90, 105 Va. 188, 53 S.E. 273, 5 L.R.A.(N.S.) 792 [8 Ann.Cas. 798]. * * *

"The decree is modified by striking out 'persuasion' and 'persuading' from the 4th and 7th paragraphs; further modified by adding after 'picketing' in the 5th paragraph 'in a threatening or intimidating manner'; vacated as to the 1st, 8th, 9th, 10th, 14th and 15th paragraphs; affirmed as to the 2nd, 3rd, 6th, 11th, 12th, 13th, 16th and the modified 4th, 5th and 7th paragraphs. Costs of this court to be divided equally."

See, also, Kleising v. Miller (Tex.Civ. App.) 83 S.W.(2d) 732.

On authority of article 5153 and the cases cited, paragraph (d) is modified by striking out the words "or in any other name," immediately following the words "and their affiliated associations as herein named," in the first part of the paragraph. Paragraph (f) is also subject to the same criticism as paragraph (d) and is, therefore, stricken from the decree, and in lieu thereof the following order is inserted: "Appellants, being the respondents named in Cause No. 49096, and the relators in Cause No. 49098, shall have the right to maintain picket posts in Jefferson County in conducting their strike, with not more than three men at any one picket post. (A picket post of three members was suggested by appellants in their petition in lower court and repeated in their argument before this court.) There shall be no concert of action among the picket posts. Appellants shall conduct their picketing peaceably without violence, force or coercion. They shall not post their picket guards nor remove them from their pickets in a threatening or intimidating manner towards appellees. In establishing their picket posts appellants shall not invade or trespass upon any premises not owned by them or under their control, without the consent of the owner thereof."

Paragraph No. 1 in the first part of the decree is modified to read as follows: "1. That the temporary restraining order entered herein on the 16th day of November, 1936, against H. F. Baker, be, and the same is hereby set aside and dissolved, and in lieu of said former order the said H. F. Baker, Chief of Police of the City of Port Arthur, and his subordinate officers, be, and they are hereby enjoined and restrained from harassing, threatening or coercing the striking members of the International Seamens Union of America, with intent to prevent, hinder,

obstruct or interfere in any manner with appellants in their right to establish and maintain picket posts as granted them in paragraph (f) set out in a subsequent portion of this decree, or with intent to force them to leave the precincts of the city of Port Arthur, or otherwise interfere with their peaceful pursuits."

As modified and reformed, the judgment of the lower court is affirmed.