NORTHWOOD *v.* BARBER ASPHALT-PAVING CO.

NUISANCE—ABATEMENT—CONTEMPT.

* Defendant was found guilty of, and was enjoined from, maintaining a nuisance, which consisted in fumes, gases, dust, etc., injurious to the inhabitants in the neighborhood. Under the decree it was commanded to do certain things for the purpose of preventing the nuisance. The decree also forever restrained the defendant from permitting such fumes, etc., to be emitted from its works in such quantities as to materially injure the health of the inhabitants. One of the complainants instituted these proceedings for contempt, claiming that the nuisance had not been abated, but was in fact worse than before. *Held:*

  1. That it was the duty of the defendant, if the methods provided for in the decree failed to abate the nuisance, to either try other means, or apply to the court for leave to do so, or close its works.
  2. That the defendant could not relieve itself from liability for contempt of court by showing that it had adopted the methods provided in the decree.
  3. That the clause absolutely restraining defendant from maintaining the nuisance must be given effect.

Appeal from Wayne; Hosmer, J.   Submitted March 7, 1901.   Decided April 16, 1901.

Bill by John Northwood and others against the Barber Asphalt-Paving Company to abate a nuisance. After a decree for complainants, a petition was filed charging a violation of its terms, and defendant was thereupon adjudged to be guilty of contempt, from which order it appeals. Affirmed.

Thirty complainants, residents or property owners in the vicinity of the works of the defendant company, filed a bill July 16, 1898, to enjoin the defendant's business as

*Head-notes by GRANT, J.

a nuisance, injurious to the health, on account of noxious vapors, odors, stenches, dust, and gases emitted from its works.   The case was heard before Judge Carpenter, of the Wayne circuit court, and on August 13, 1898, he filed an opinion in which he said:

"The complainants have suffered much (more, I think, than from the odor) from the dust arising from the handling of crushed stone in the defendant's works.   In my judgment, this suffering could have been avoided, had defendant used proper appliances and due care.   It is to be hoped that the improvements decided upon by the defendant will abate the dust nuisance.   If they do not, additions or changes will be made in the manner hereinafter directed, which will abate it."

He then ordered a reference to an expert, Mr. Charles F. Burton, to take proofs, and determine and report the most practicable method of abating the dust nuisance and of diminishing the odor.   Mr. Burton took proofs, made his report, and on February 1, 1900, a decree was entered declaring defendant's works, as operated, to be a nuisance, creating offensive and injurious fumes, stenches, gases, and dust, and reciting that it satisfactorily appeared that by the use of certain measures and appliances the defendant could effectually subdue and confine to its own premises the offensive and injurious qualities of such fumes, etc.   The decree then states:

"Therefore it is ordered, adjudged, and decreed that said defendant shall immediately cover the vats in which the asphalt is boiled with a substantial metal cover, and shall cause the steam and other matter arising from the said boiling asphalt to be conducted to and passed through the fires in the furnace of said works, to destroy such fumes, stenches, gases, and dust complained of in the bill of complaint filed in this cause, and shall cover the settling-chamber or dust-collector, to which the bulk of the dust complained of shall be carried and stored, with two or more thicknesses of cloth, so as to prevent the emission of dust as complained of in said bill.

"It is further ordered that said defendant company shall be forever restrained from permitting to be emitted

from its said works, fumes, stenches, gases, and dust, offensive and injurious as aforesaid, in such quantities as to materially injure the health of said complainants, or either of them, or to in any way interfere with the comfortable enjoyment of their homes."

On July 18, 1900, one of the complainants presented a petition setting forth no abatement of the nuisance, and charging a willful disobedience of the decree, and asked that the defendant be punished for contempt. The answer is as follows:

"This defendant, answering, says that it has fully complied with the decree of this court; that it has caused its vats to be covered, and has caused all steam and other matters arising from the melting asphalt to be passed through the fires of a furnace, and has caused the dust-collector to be covered with cloth, as directed in said decree. A more particular description of the work done to insure the carrying out of the terms of said decree, and of the directions given to its employés in relation thereto, are set forth in the exhibits hereto annexed. This defendant in good faith has endeavored to carry out the provisions of said decree. It caused its vats and dust-collectors to be covered as directed, and the vapors and dust to be collected and carried by fans and taken care of as directed; but, the apparatus not proving efficient in practice, this defendant has recently caused the entire apparatus to be reconstructed, at a cost of upwards of $2,000, and this defendant avers that the same is a full compliance with the provisions of said decree. Said apparatus was constructed and put in operation within the present month, and about 10 days before the filing of said petition, and the employés have had, necessarily, to become familiar with its operation, to secure the best results. This defendant avers that it is its intention, if the present apparatus, after a fair trial of its efficiency, should not prove entirely satisfactory in practice, to further improve the same so far as it may be practicable to do so.

"This defendant further says that, from the nature of the business, it is not practicable to remove all odors of asphalt. If asphalt paving is to be laid at all in the city, it is essential that the plant be located on or near to the line of a railroad, because the great weight and bulk of the material used, and the great cost of such transporta-

tion by wagons for a great distance, make it impracticable to locate the plant at a great distance from a line of railroad; and, further, that the fact that the material must be laid upon the street while heated to a temperature of upwards of 300 degrees, as well as the great cost of hauling, renders it indispensable that the works be located near to the streets to be paved; that in loading and hauling the heated asphalt from the works to the street being paved, and during the progress of paving, the odors of heated asphalt will necessarily be given off, and there is no practicable means of preventing it; that the wagons engaged in hauling the material to the streets now in course of paving pass near to petitioner's dwelling, and this defendant believes and avers that any odors which may be smelled by petitioner or his family emanate from the material which is being loaded or while being hauled near to said dwelling, and are not given off during the process of preparation or manufacture. This defendant avers that the odor of asphalt so given off during the loading and hauling is not unhealthful, nor does it produce any said discomfort as gives a right to petitioner to complain."

Issue was joined, and a large amount of testimony was taken before Judge Hosmer, who, by the consent of the parties, visited the defendant's works and saw them in operation. He found the defendant guilty, and imposed a fine of $150. After referring to his examination of the works and to the testimony, and stating that the fumes are not noxious to him, his opinion proceeds:

"Under these circumstances, I cannot but find that the defendant company has been guilty of the violation of the injunction. A finding of this character, I think, probably will preclude any annoyance in the future. Of course, there is no one before the court except the defendant itself, which is a corporation; but, if there was a subsequent violation, the officers of the corporation might be easily joined, or those in charge of the building, in an application for contempt proceedings. As it is now, in view of the fact that the repairs or the alterations were made under the express direction of the court, I cannot but believe there is a certain element of good faith about it; but at the same time I have no doubt that it did continue with the operation of the works after it must have become apparent to them that there was a violation of the injunction."

*John H. Powell*, for petitioner.

*John J. Speed* and *Robert T. Speed*, for respondent.

GRANT, J. (*after stating the facts*). It is evident from reading the opinion of Judge Carpenter that in entering this decree he followed the case of *Ballentine* v. *Webb*, 84 Mich. 38 (47 N. W. 485, 13 L. R. A. 321), and made a reference to ascertain what could be done to prevent the escape of the dust and the noxious vapors. He recognized the business of the defendant as a legitimate one, which could not be restrained by the injunction of the court until all proper means had been tried to prevent the escape of dust, noxious vapors, etc. Upon the filing of the report he decreed certain specific things to be done, and to this added the general clause. It is a fair inference from Judge Hosmer's opinion that he finds that defendant complied with this order, as to the preventives directed by the court, but that they failed to accomplish the object; that this failure was known to the defendant, and yet it continued the nuisance. The result of Judge Hosmer's findings is either that the defendant can, by proper precautions, avoid the dust and fumes which are injurious, or that it must and will close its works entirely, for he states that his finding "probably will preclude any annoyance in the future." In what manner it will preclude the annoyance does not clearly appear. The testimony on the part of the complainants is that the dust and vapors are worse than they were before the original decree was entered, and the devices and means therein provided carried out. If this be so, and their testimony as to the effect upon the inhabitants is true, and no means can be devised to prevent it, clearly the defendant's business should be enjoined *in toto*. The case would then clearly fall within *Robinson* v. *Baugh*, 31 Mich. 290; *McMorran* v. *Fitzgerald*, 106 Mich. 649 (64 N. W. 569, 58 Am. St. Rep. 511); and *People* v. *Detroit White Lead Works*, 82 Mich. 471 (46 N. W. 735).

It is the contention of the defendant that the specific precautions decreed to be taken by it control; that it complied with those precautions, and, if they failed to produce the desired result, it cannot be held guilty of contempt for proceeding to carry on its business contrary to the general clause of the decree; and that complainants must proceed against it by filing a supplemental petition in the original case. Its counsel claim that these particular provisions control the general language of the decree, invoking the rule that is applied in the construction of statutes, and citing End. Interp. Stat. §§ 399, 295. It is also urged that we should look to the opinion of Judge Carpenter; citing *Third Reformed Dutch Church* v. *Fox*, 12 Phila. 296.

None of the issues in the original case can be retried in this proceeding. They are *res adjudicata*. The decree prescribed certain things to be done, which, in the opinion of the court, might effect a remedy. The court, however, saw fit to add a clause in unmistakable language prohibiting the carrying on of the business to the injury of the health of the complainants, or to the interference with the comfortable enjoyment of their homes. The plain purpose of this clause was to prohibit the business unless the injurious effects upon the complainants and their families could be obviated by the use of the means proposed, or by other means. The defendant, under the finding of the court, found these specific provisions a failure, and yet the defendant continued to carry on its business in a manner which it knew was in violation of the injunction. The complainants in the chancery suit were not required to investigate the defendant's plant, determine what it had done, and virtually commence another proceeding. The facts were peculiarly within the knowledge of the defendant. Complainants could only be expected to know that the nuisance continued, and had the right to proceed upon the theory that its continuance was in violation of the decree. When the defendant ascertained that these provisions were ineffectual,

it could have tried other means without any violation of the injunction; or it could have applied to the court for leave to provide other means, if it was advised that it could not proceed without the direction of the court. Its answer shows that it was contemplating other means if the ones adopted should prove ineffectual.

Under the findings of the court, we think that the order adjudging the defendant guilty of contempt should be sustained, and it is affirmed, with costs.

MONTGOMERY, C. J., HOOKER and MOORE, JJ., concurred. LONG, J., did not sit.