O'CONNOR v. JERSEY CREAMERY CO.

1. NUISANCES — UNRESTRICTED   RESIDENTIAL   DISTRICTS — NIGHT NOISES.

Persons living in residential district are entitled to quiet enjoyment of their homes free from noise and other nuisance arising from operating creamery plant at night, even though property is not restricted.

2. SAME—INJUNCTION.

Where, in suit to enjoin operation of creamery plant in residential district in nighttime and to abate nuisance in connection therewith, court below delayed action for two years and gave defendants every opportunity to abate nuisance, but efforts in that respect proved unsuccessful and nuisance continued, decree enjoining operation of plant between 11 p. m. and 6:30 a. m. was justified.

3. SAME—DISTURBING RESIDENTS IN NIGHTTIME NOT EXCUSED BY FACT THAT BUSINESS CONDUCTED IS LAWFUL.

That owners of creamery plant are engaged in lawful occupation requiring certain amount of operation during night hours in order to meet demands of large city and competition of others, does not justify invasion of residential district, resulting in disturbance of peace and comfort of inhabitants, even though property is unrestricted.

4. SAME—APPEAL AND ERROR—MODIFICATION OF DECREE—ABATEMENT OF NUISANCE.

Decree enjoining operation of creamery plant in residential district between hours of 11 p. m. and 6:30 a. m. is affirmed, on appeal, but without prejudice to defendants' right to ask modification thereof by trial court so as to allow operation in nighttime, dependent on elimination of nuisances that were expressly enjoined, in view of assurances by defendants that business can now be conducted so that there will be no further nuisances.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted April 13, 1933. (Docket No. 118, Calendar No. 37,150.)   Decided May 16, 1933.

Bill by John O'Connor and others against Jersey Creamery Company of Detroit, a Michigan corporation, and others to abate a nuisance. Decree for plaintiffs. Defendants appeal. Affirmed, and remanded for entry of decree without prejudice to request modification thereof.

*Leonard F. Donaldson* (*Wm. Henry Gallagher,* of counsel), for plaintiffs.

*Kenneth M. Stevens* (*Richard F. Molyneaux,* of counsel), for defendants.

Butzel, J.   Defendant, Jersey Creamery Company, of Detroit, owns and operates a creamery in a large two-story brick building at the corner of Field and Sylvester avenues, Detroit. The building covers three lots, faces Field avenue, and the company also uses the two adjacent vacant lots to the south, adjoining the home of plaintiffs Sharpe. The building was originally erected for use as a telephone exchange. Subsequently, it was occupied by the St. Agnes Home for Girls for a number of years. Defendant purchased the building and adjoining lots several years later.

Plaintiffs in the case, John O'Connor and 21 others, reside in the immediate neighborhood of the building, some of them having been residents of the locality for over 20 years. The nature of the neighborhood is residential, and a number of the homes are very substantial in character. The property is unrestricted, however. Field avenue runs north and south and is parallel with East Grand boule-

vard, a short block to the west. A 20-foot alley midway in the block separates the lots facing the east side of the boulevard from those fronting on the west side of Field avenue. The block is bounded on the north by Sylvester avenue and on the south by Mack avenue, the latter a business thoroughfare. The distance from Sylvester avenue to Mack avenue is over 850 feet.

Upon learning of the purchase of the property by defendant, owners of property in the immediate neighborhood notified defendant that protective measures would be taken to prevent any nuisance. It was also claimed that the property was restricted, although this assertion was without foundation. Defendant remodeled the building, and early in the spring of 1930 began operating the premises as a creamery and point for the distribution of its products. In April, 1930, shortly after production was begun by defendant, the present suit was instituted by plaintiffs. They alleged in their bill of complaint that defendant was creating nuisances, consisting of creating smoke and odors, the blocking up of the alley by parking trucks, the spreading of broken glass in the alley, the use of vile language by drivers and workmen, the insulting of women by drivers, and particularly creating noises at nighttime caused by the shouting of drivers, the unloading and loading of motor trucks, the running of motors, etc.

After a protracted hearing, the trial judge found that the nuisances did exist as alleged, but that defendant was attempting to abate them; that the principal nuisance consisted of the noise created during the night hours, during which the residents had a right to repose in sleep without being disturbed. The trial judge further found that the ex-

tent of the nuisance was such as to affect the health and peace of mind of plaintiffs, and he enjoined the operation of the plant from 11 p. m. until 6:30 a. m. in such a manner as to destroy the repose, rest, and quiet of the plaintiffs.   As an alternative to the entire stoppage of operations during these hours, he permitted the construction of walls facing the Sharpe residence and the alley.   The judge stated that if they muffled the objectionable noises, defendant would be permitted to load vehicles during the hours described, but he expressly provided that under no circumstances could the plant be operated in a manner that would act as a disquieting influence upon the plaintiffs during the hours mentioned.   An injunction was issued restraining the nuisances complained of, with a stay of proceedings until September 5, 1930, in order to afford defendant an opportunity to take remedial measures in an endeavor to terminate the night noises.

On October 11, 1930, affidavits were filed by two of the plaintiffs alleging that the construction of the passage-way, instead of stopping the noises, had aggravated them; that the trucks used in connection with the business arrived in increased numbers between the hours of 11 p. m. and 6:30 a. m., and were loaded in a "drum-like area," so that the improvement intended to remedy the condition had the opposite effect and resulted in an even greater disturbance and interference with the sleep of plaintiffs, etc.   On the 28th day of October, 1930, the court ordered defendant to desist from night operation of its plant unless within seven days it installed soundproof doors at each end of the passage-way and instituted a patrol system to prevent the running of motors, the yelling and cursing of drivers, the squeaking of brakes, and all other unnecessary

noises by trucks parked in or about defendant's property. Thereupon, the passage-way was inclosed by overhead doors, a night watchman employed, and further efforts made to overcome the nuisance.

On September 1, 1931, two of the plaintiffs again filed affidavits, showing that there had been a continuation of the noises; that no attempt was made to control or discipline employees of defendant responsible for the disturbances; that on August 8, 1931, three of defendant's employees had been convicted in the recorder's court for the city of Detroit for disturbance of the peace near plaintiffs' property. Defendant claimed that it had installed modern machinery; that there was no noise in the creamery at night; that it had done everything within its power to abate other incidental noises; and that it had taken every precaution to comply with the previous orders and recommendations of the court. It admitted, however, that it had materially increased the volume of business at the plant. One witness testified he was awakened by the noises and could not get to sleep again "with the racket and thundering and cracking," that it shook his windows. After hearing testimony, the court stated that the creamery could not be operated in this residential locality so as to deprive plaintiffs of the peace and rest to which they were rightfully entitled at night, and on the 21st day of June, 1932, over two years after the case had been first heard, a decree was entered enjoining defendant from carrying on all night operations both within and without the plant between the hours of 11 p. m. and 6:30 a. m. Defendant appeals from this decree.

We have carefully examined the abstract of the record which counsel agree gives the salient facts

to be deduced from the voluminous record.  We are in full accord with the conclusions of the trial court. Plaintiffs became residents of the neighborhood long prior to defendant's purchase of the property, and the latter was fully forewarned prior to the beginning of its operations that plaintiffs would insist upon their rights.   The facts differ from those in *Shimberg* v. *Risdon Creamery Co.,* 215 Mich. 94. Plaintiffs were entitled to the peace, rest, and comfort of their homes, located in a residential neighborhood, even though the property was not restricted.    There is no doubt that defendant attempted to prevent and abate all nuisances, but it was not successful in doing so.  The court patiently waited, gave defendant ample opportunity to abate the nuisances, and. only as a last resort, two years after the filing of the bill of complaint and after several hearings, it was forced to reach the final conclusions embodied in the decree.   For this reason, the decree of the lower court should be affirmed, with costs to plaintiffs.

The questions raised on appeal have been ruled upon so recently that we need not discuss them. Attention is called to *Northwood* v. *Barber Asphalt-Paving Co.,* 126 Mich. 284 (54 L. R. A. 454); *Trowbridge* v. *City of Lansing,* 237 Mich. 402 (50 A. L. R. 1014); *Adams* v. *Kalamazoo Ice & Fuel Co.,* 245 Mich. 261; and, more particularly, *Kobielski* v. *Belle Isle East Side Creamery Co.,* 222 Mich. 656 (31 A. L. R. 183), wherein the facts somewhat resemble those in the instant case.

At the hearing on appeal in this court, counsel for defendant stated that, since the decree in the lower court was entered, the nuisance has been abated and the noises in the operation of the plant at night have been eliminated; that the defendant's

trucks are being kept at a garage some distance from the plant; that the number of trucks that visit the plant at night has been reduced to 24; that a red light has been installed in the alley in the rear of the plant as a signal control of traffic on the premises, that the trucks assemble on Mack avenue, and that the red signal light is operated so as to prevent the presence of more than one truck at a time on the creamery property; that other improvements have also been made, all difficulties overcome, and the nuisances abated.

We are mindful of the fact that defendant is engaged in a lawful occupation requiring a certain amount of operations during the night hours in order to meet the demands of a large city and the competition of others. This fact, however, cannot justify the invasion of a residential district resulting in the disturbance of the peace and comfort of the inhabitants, even though the property is unrestricted. The lower court gave defendant ample opportunity to abate the nuisance. During the continuation of these proceedings, the residents suffered discomfort and loss of sleep. They were put to the continuous expense of employing attorneys to protect their rights. We are loath to destroy the usefulness of defendant's plant or to injure its business, but the rights of plaintiffs in the instant case are paramount. Litigation must end at some time, particularly when there is a continuing nuisance that has not been abated.

In view of the assurances given by defendant that it can now conduct its business so that there will be no further nuisances, except such casual noises as would ordinarily be heard from the busy thoroughfares on or near which plaintiffs live, the decree is affirmed without prejudice to defendant's rights

in asking the lower court for a modification thereof, so as to allow a continuation of its operations in the nighttime, dependent upon an elimination of the nuisances that are expressly enjoined. Such modification, if made, is to provide that, should such nuisances continue, plaintiffs shall be entitled to reasonable attorney's fees if the court later finds it necessary to set it aside and restore the decree to its present form. The granting of such modifying motion and a reasonable stay within which to present it shall be wholly within the discretion of the trial court, to which the case is remanded for the entrance of a decree in accordance with the instructions herein contained.

McDONALD, C. J., and CLARK, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.